IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| YEKEEN A. BELLO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AMD 03-CV-493 |
| BANK OF AMERICA CORPORATION, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT BANK OF AMERICA CORPORATION'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Douglas M. Topolski
Elena D. Marcuss
McGuireWoods LLP
Seven Saint Paul Street, Suite 1000
Baltimore, Maryland 21202
410-659-4400

Attorneys for Defendant
Bank of America Corporation

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. UNDISPUTED FACTS .........................................................................................................2

    A. Background Information ...............................................................................................2

    B. Plaintiff's Employment With The Bank......................................................................3

III. ARGUMENT .........................................................................................................................7

    A. Controlling Standards ...................................................................................................7

        1. Summary Judgment ................................................................................................7

        2. *McDonnel Douglas* Framework.............................................................................8

    B. The Bank's Motion For Summary Judgment Should Be Granted. ..............................9

        1. Plaintiff Cannot Establish the Elements of a Prima Facie Case of
           Discriminatory Termination ...................................................................................9

        2. Even If It is Assumed That Plaintiff Can Establish a Prima Facie
           Case, He Cannot Establish That The Bank's Legitimate Reasons
           For Its Actions Are A Pretext for Intentional Discrimination ..............................10

IV. CONCLUSION....................................................................................................................15

APPENDIX OF EXHIBITS .........................................................................................................16

Defendant Bank of America Corporation (the "Bank"), through undersigned counsel, respectfully submits this Memorandum with exhibits in support of its Motion for Summary Judgment. For the reasons discussed below, Plaintiff cannot raise any genuine issue of material fact which could preclude judgment in favor of the Bank as a matter of law. Accordingly, the Bank's Motion for Summary Judgment should be granted and judgment should be entered in favor of the Bank and against Plaintiff.

## I.  INTRODUCTION

On or about February 24, 2003, Plaintiff Yekeen Bello, a former employee of the Bank, filed a Complaint alleging that he was terminated without explanation or reason and that, as a result, he believes he was discriminated against on the basis of his age, race, and national origin in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et. seq., and Title VII of the Civil Rights Act of 1964, 44 U.S.C. §§ 2000e, et seq. Discovery has now been completed and the record reveals that there is no legal or factual basis for Plaintiff's subjective beliefs.

As explained more fully below, Plaintiff was discharged as a result of reduction in force that was necessitated by a decrease in the volume of work in his area. Plaintiff was selected from among other associates for reduction based on a ranking of the skills and performance of the twelve associates in that group, in which he was ranked last in every category. Plaintiff cannot show that his position remained open to similarly qualified applicants after his termination, that the Bank did not treat age, race, or national origin neutrally when making its decisions, or that any of the remaining associates were performing at a lower level than that at which he was performing. Accordingly, summary judgment in this matter is appropriate and should be granted in favor of the Bank.

## II. UNDISPUTED FACTS

### A. Background Information

The Bank's Baltimore Item Processing Operations is responsible for, among other things, capturing all of the transactions in the Bank's mid-Atlantic region. One its subgroups, Check Processing, is responsible for processing within a short turn-around time frame all of the checks that are received by the Bank's Branches and pre-encoded customers. It is a 24-hour a day, five day per week, operation with three shifts: Day; Twilight; and Midnight. There is one manager responsible for each shift. There are five areas within each shift each overseen by a supervisor: Reader / Sorter; Set Up & Batch; Transit / Dispatch; Reconcilement; and Reject Re-Entry. Diane Broughman is the manager of the Twilight Shift. Phyllis Burkhart is the supervisor of Reconcilement and Reject Re-Entry on the Twilight Shift. *(Affidavit of Diane Broughman, attached hereto as Exhibit 1, at ¶¶ 2-5.)*

As discussed below, when Plaintiff came to the Operations Center after Sovran Bank was taken over by NationsBank, now Bank of America, he started in Twilight Transit under Lou Mont. Later, in an effort by the Bank to save his job form a previous layoff, Plaintiff was transferred to Twilight Reconcilement[1] and Reject Re-Entry[2] under Phyllis Burkhart. After his transfer, the Bank attempted to train Plaintiff in various functions including, sorter prep, reject breakdown, and reconcilement, in an attempt to identify work for which he was suitable.

---

[1] Reconcilement is the on-line balancing of customer accounts. In order to do this, the associate must locate the error by pulling rejected checks and source tapes and then must balance the account according to the error. *(Affidavit of Phyllis Burkhart, attached hereto as Exhibit 2, at ¶ 4.)*

[2] Most checks can be processed automatically in large machines that read and then sort the checks. However, some checks cannot be read by the machines for a variety of reasons, mainly due to the condition of the check such as being folded, too crumpled, or have bad MICR printing. Those rejected checks are sent to Reject Re-Entry. The first think Reject Re-Entry does is attempt to recondition the checks by going through each bundle and fixing the problems with those checks, such as for example unfolding a check. The check are then run through the transporter and then returned to Reject Re-Entry where each check is sent, check-by-check, through a stripping machine which places a strip on the bottom of the check that can then be micro-encoded with the necessary information from the

However, in these functions, Plaintiff could not learn his duties and had to ask the same questions repeatedly, had repeated errors, and was unable to attain an acceptable output. Plaintiff was finally moved to Reject Re-Entry where he was assigned two primary functions: working the stripping machine and monitoring the printers in the printing room. Plaintiff remained in that area until the reduction in force that resulted in his termination from the Bank. *(Id. at ¶ 6.)*

**B.     Plaintiff's Employment With The Bank**

Plaintiff was hired by Sovran Bank in September 1991. *(Deposition of Yekeen Bello, attached hereto as Exhibit 3, at 16:12-17.)*[3] Plaintiff's first position was in Transit and was located in Hyattsville. (*Plaintiff Dep. (Ex. 3) at 16:18 – 17:8 and 18:10-13*.) Plaintiff remained in that position until Sovran was taken over by NationsBank, the Hyattsville location was closed, and its functions were combined with those in the Bank's Operations Center at 225 N. Calvert Street in Baltimore. (*Plaintiff Dep. (Ex. 3) at 18:7 – 19:5; Broughman Aff. (Ex. 1) at ¶ 3.*)

After moving to the Baltimore Operations Center, Plaintiff remained in Transit. *(Plaintiff Dep. (Ex. 3) at 28:13-16.)* His supervisor there was Lumett Mont, who is African-American. *(Plaintiff Dep. (Ex. 3) at 32:5 – 33:5.)* Plaintiff received two reviews from Mr. Mont in which his performance was rated at or below expectations in the various core performance areas. *(Plaintiff Dep. (Ex. 3) at 31:13 – 32:4, 59:1-13, 63:1-5 and Exhibits 2 and 3 thereto.)* However, despite the fact that Plaintiff admits that he signed the reviews and that he filled out or contributed to the reviews, Plaintiff claims that pages were missing or blank or that ratings were not filled in at the time he saw them. *(Plaintiff Dep. (Ex. 3) at 33:19 – 34:6; 56:15 – 57:15; 63:1*

---

check to allow it to be processed. Checks that cannot be sent through the stripping machine are placed in a clear envelope. The operation has 5 stripping machines. *(Burkhart Aff. (Ex. 2) at ¶ 4.)*

[3] Citations to deposition pages and lines will herein be indicated as page : line(s). Thus, this citation is to the deposition of Plaintiff at page 16 lines 12-17.

– 65:2; 66:12 – 67:10; and 67:20 – 68:13.)  In addition, despite the fact that the first review rates Plaintiff's performance on CLAS, a computer function, as acceptable, Plaintiff claims that Mr. Mont never allowed him to work on the computer. *(Plaintiff Dep. (Ex. 3) at 50:21 – 51:10 and 52:5-13.)*  Plaintiff does, however, admit that he and Mr. Mont had some differences on the scope of Plaintiff's duties.  Plaintiff admitted that Mr. Mont would ask Plaintiff to help his coworkers complete their jobs, but that Plaintiff would refuse because he had finished his own job and did not feel as if he had to do work he thought others should do.  Additionally, Plaintiff admitted that he would refuse to offer Mr. Mont advice when asked since he considered the subjects about which Mr. Mont inquired to be within the realm of a supervisor's duties and Plaintiff was not a supervisor. *(Plaintiff Dep. (Ex. 3) at 40:5 – 43:4 and 45:8 – 48:9.)*

A few years after Plaintiff moved to the Baltimore Operations Center, Twilight Check Processing went through a reduction in force in which Plaintiff's position was slated for layoff. At that time, associates whose positions were being eliminated were given a time period during which they would be allowed to post for other jobs within the Bank through the Bank's posting system.  Ms. Broughman learned that Plaintiff was not being selected for any of the positions for which he had applied.  She appealed to her superior to find some way to find another position for Plaintiff because Ms. Brougham believed that Plaintiff needed the position to support his family. Solely as a result of Ms. Broughman's intervention, Plaintiff was not laid off and instead was re-assigned to work under Ms. Phyllis Burkhart, supervisor of the Reconcilement and Reject Re-Entry areas. *(Broughman Aff. (Ex. 1) at ¶ 5; Plaintiff Dep. (Ex. 3) at 77:20 – 79:5.)*[4]

---

[4] After his transfer, the Bank attempted to train Plaintiff in various functions including, sorter prep, reject breakdown, and reconcilement, in an attempt to identify work for which he was suitable.  However, in these functions, Plaintiff could not learn his duties and had to ask the same questions repeatedly, had repeated errors, and was unable to attain an acceptable output.  For example, Plaintiff was trained on the simplest form of reconcilement, Pocket 8s, but could not retain instructions and was never able to attain an acceptable output.  Plaintiff was finally moved to Reject Re-Entry where he was assigned two primary functions: working the stripping machine, which places a blank strip on the bottom of checks that can no longer be read electronically so that it can be encoded with

4

Plaintiff's job performance did not improve from its deficient level in Transit. In March 1999, Plaintiff received a Performance Appraisal covering the period of April 1997 through February 1999, in which Plaintiff's performance was rated below expectations in every core performance area. *(Plaintiff Dep. (Ex. 3) at 86:14 – 88:3 and Exhibit 6 thereto.)* As with his earlier reviews, Plaintiff denies that the ratings were in the Appraisal when he signed it, despite the fact that he admits that he wrote on the form containing the substandard assessments that he disagreed with Ms. Burkhart's judgment as to his performance. *(Plaintiff Dep. (Ex. 3) at 93:12 – 94:19 and 116:2 – 121:3.)* Plaintiff admitted, however, that he understood that Ms. Burkhart wanted him to increase his speed and output, but that he believed that he was doing enough. *(Plaintiff Dep. (Ex. 3) at 95:11-21.)* In fact, the following year, Plaintiff was counseled for picking and choosing among the bundles of work that needed to be completed and for his unacceptable productivity, as well as his insubordinate behavior when this was discussed with him. Plaintiff refused to sign the documentation of this counseling. *(Broughman Aff. (Ex. 1) at ¶ 7 and Exhibit A thereto; Burkhart Aff. (Ex. 2) at ¶ 7 and Exhibit A thereto.)* Plaintiff claims that the documentation is a complete fabrication and that Ms. Burkhart never talked to him about picking and choosing bundles. *(Plaintiff Dep. (Ex. 3) at 125:9 – 129:14 and Exhibit 7 thereto.)* Plaintiff also claims that Ms. Burkhart never talked to him about his speed on the stripping machine, because she knew if she did, Plaintiff "probably won't do it." *(Plaintiff Dep. (Ex. 3) at 90:20 – 91:4.)* In fact, Plaintiff claims Ms. Burkhart never talked to him at all. *(Plaintiff Dep. (Ex. 3) at 125:21 – 126:2 and 132:18 – 133:1.)*

In March 2002, Plaintiff received another performance appraisal in which his productivity was again identified as being below expectations. This review was discussed with

---

the appropriate information, and monitoring the printers in the printing room to make sure they were clean, had printer tape, and were filled with paper. *(Broughman Aff. (Ex. 1) at ¶ 6; Burkhart Aff. (Ex. 2) at ¶ 5.)*

5

Plaintiff, but Plaintiff refused to sign it. *(Burkhart Aff. (Ex. 2) at ¶ 8 and Exhibit B thereto.)* As with other documents Plaintiff refused to sign, Plaintiff denies that he has ever seen this document and that Ms. Burkhart ever discussed his performance with him. *(Plaintiff Dep. (Ex. 3) at 129:18 – 133:1 and Exhibit 8 thereto.)*

**C.    June 2002 Reduction in Force**

In the first half of 2002, in an effort to cut costs, Item Processing identified areas in which staffing could be reduced. One of the areas that was identified was Twilight Reject Re-Entry which had a decrease in workload due to a decrease in the number of rejected items received by the area. This warranted a reduction of its associate complement by one part-time associate. *(Broughman Aff. (Ex. 1) at ¶ 8.)* In order to determine who should be reduced, Ms. Burkhart and Ms. Broughman ranked the 12 associates in Twilight Reject Re-Entry based on their skills and performance in eight categories: accountability; client focus; communication; flexibility; initiative; interpersonal skills; teamwork; and technical/job knowledge. These categories had further subcategories. Plaintiff ranked lowest in every single category. Accordingly, Plaintiff was selected for layoff. *(Broughman Aff. (Ex. 1) at ¶ 8 and Exhibit B thereto; Burkhart Aff. (Ex. 2) at ¶ 10 and Exhibit C thereto.)* Plaintiff was offered severance, including twenty weeks of pay, as part of the corporate severance program in exchange for his execution of a general release agreement. Plaintiff declined the offer. *(Affidavit of Tynetta Robinson, attached hereto as Exhibit 4, at ¶ 3; Plaintiff Dep. (Ex. 3) at 145:4-6.)* No new employees have been hired for Twilight Reject Re-Entry since Plaintiff's termination. *(Broughman Aff. at ¶ 9.)*

The eleven associates against whose performance Plaintiff's performance was ranked, include eight who are African-American, three who are over 40, and at least one who is also

6

from Africa. *(Exhibit B to Broughman Aff. (Ex. 2); Affidavit of Doniel Sutton, attached hereto as Exhibit 5, at ¶ 3; Plaintiff Dep. (Ex. 3) at 227:21 – 228:4.)* In addition, while Plaintiff was 58 at the time of his layoff, Ms. Burkhart was 60 years old and Ms. Broughman was 64 years old. *(Burkhart Aff. (Ex. 2) at ¶ 11; Broughman Aff. (Ex. 1) at ¶ 10.)*

### III.    ARGUMENT

A.    <u>Controlling Standards</u>

    1.    **Summary Judgment**

Federal Rule 56(c) provides that summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. 56. <u>See</u> also <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-8, 106 S.Ct. 2505, 2509-10 (1986). Plaintiff must oppose a properly supported motion such as this one with "specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 252, 106 S.Ct. 2510. A fact is material only if it might affect the outcome of the case; and a dispute is genuine only if a reasonable jury could return a verdict in favor the Plaintiff. <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. at 2510.

Plaintiff's unsupported speculation, conclusory statements, and self-serving assertions are not sufficient to defeat a motion for summary judgment. <u>Evans v. Technologies Applications & Service Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996). Further, Plaintiff "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985). Moreover, the mere argument of counsel in a brief is

insufficient to satisfy this standard. <u>Rountree v. Fairfax County School Board</u>, 933 F.2d 219, 233 (4th Cir. 1991).

Plaintiff must produce more than a mere scintilla of evidence: "If the evidence is merely colorable, or not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50; 106 S.Ct. at 2511; <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 958-59 (4th Cir. 1984). Where, as here, Plaintiff cannot set forth the required quantity and quality of evidence, Rule 56(c) mandates the entry of summary judgment in favor of the Bank. <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S.Ct. at 2552. Courts have an affirmative obligation to prevent factually unsupported claims from proceeding to trial. <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987).

### 2. *McDonnel Douglas* Framework

The *McDonnel Douglas* Framework applies to age, race, and national origin claims alike. <u>Causey v. Balog</u>, 929 F. Supp. 900, 909 (D. Md. 1996). Under this scheme, Plaintiff has the initial burden of demonstrating a prima facie case. If he does so, the burden shifts to the Defendant to provide a nondiscriminatory reason for the adverse employment action. Defendant's burden is one only of production, not persuasion. Once Defendant meets this burden, the presumption of discrimination goes away and the burden shifts back to Plaintiff to show that the proffered reason is only a pretext for intentional discrimination. <u>Causey</u>, 929 F. Supp. at 909.

In a reduction in force context, a plaintiff may establish a *prima facie* case by showing that:

(1) he was a member of the protected class;
(2) he was selected for discharge from a larger group of candidates;
(3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and

8

> (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.

Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993); Smith v. United Refrigeration, Inc., 47 Fed. Appx. 674, 675 (4th Cir. 2002). The fourth element might also be satisfied through the introduction of "other probative evidence that indicates the employer did not treat age [, race, and national origin] neutrally when making its decision." Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998).

**B.     The Bank's Motion for Summary Judgment Should Be Granted.**

    **1.     Plaintiff Cannot Establish the Elements of a Prima Facie Case of Discriminatory Termination.**

The undisputed evidence establishes that Plaintiff cannot establish a prima facie case of discrimination on any of the three asserted bases. While Plaintiff can establish the first two elements, in that he is a member of various protected classes as he is African-American, from Nigeria, and over 40, and he was selected for discharge from a larger group of candidates, Plaintiff cannot establish either the third or fourth element of a prima facie case. As a result, the Bank's motion for summary judgment should be granted for these reasons alone.

No evidence exists to support the notion that Plaintiff might have been performing at a level substantially equivalent to the lowest level of those of the group retained. To the contrary, the undisputed and indisputable evidence establishes that he was not. Plaintiff admitted in his deposition that he was not familiar with the job performance of any of the individuals against whom his performance was ranked except Jeannette Benda whom he refers to as the "disabled one" with whom he sometimes worked. *(Plaintiff Dep. (Ex. 3) at 193:21 – 203:9.)* Moreover, Plaintiff admitted in his deposition that he cannot identify anyone whom he believes should have been laid off instead of him or whose performance was less satisfactory than his. *(Plaintiff Dep.*

*(Ex. 3) at 214:6-20.)* As a result, Plaintiff cannot establish the third element of a prima facie case.

Similarly, Plaintiff cannot hope to establish the fourth element of a prima facie case, that the residual group contained some unprotected persons who were performing at a lower level than Plaintiff. Not only can Plaintiff not identify any such individuals, the undisputed evidence establishes that all of the other associates, a group which consists of individuals both inside and outside of all of the protected groups at issue, were performing better than Plaintiff. Moreover, it is undisputed that the factors relied upon by the Bank for selecting who would be terminated, which included very specific factors related to job performance, were race, national origin, and age neutral.[5] Against this great weight of evidence, Plaintiff offers nothing but conclusory allegations devoid of any specific evidentiary support. These assertions are insufficient to support his claims and the Bank's motion should therefore be granted because Plaintiff cannot establish a prima facie case of discrimination under any theory. Causey v. Balog, 162 F.3d at 801-2.

   2. **Even If It Is Assumed That Plaintiff Can Establish A Prima Facie Case, He Cannot Establish That The Bank's Legitimate Reasons For Its Actions Are A Pretext for Intentional Discrimination.**

To the extent it can be assumed for the sake of argument that Plaintiff might be able to raise some issue as to whether he can establish a prima facie case of discrimination, the above discussion demonstrates that the Bank had a legitimate nondiscriminatory reason for its action, the need to reduce costs. Thus, it falls to Plaintiff to establish that the reduction in force was a mere pretext for intentional discrimination on the basis of Plaintiff's race, national origin, or age.

---

[5] Plaintiff testified that he had no idea how the selection for the layoff was made. *(Plaintiff Dep. (Ex. 3) at 135:7-17.)*

10

Plaintiff has simply not educed any evidence through which he could possibly made such a showing.

In fact, all Plaintiff has is his various complaints about his employment with the Bank. However, even assuming the truth of these allegations, none are probative of Plaintiff's claims of discrimination. Plaintiff claims that the Bank refused to train him on reconcilement procedures despite his repeated requests. *(Complaint at ¶ 13.)*[6] In addition, during his deposition, Plaintiff asserted that despite the various comments in his performance reviews about training he had completed, was in the process of completing, or was scheduled for, he received no training from the time he moved to the Baltimore Operations Center. Even for the stripping machine to which he was assigned, Plaintiff claims that a technician, not the Bank, trained him on it. *(Plaintiff Dep. (Ex. 3) at 76:2-20; 80:18-21; and 81:14 – 82:1.)* On the other hand, Plaintiff claims that everyone else received training and was trained in reconcilement, blaming this on the fact that he believes that they did not want him to leave the stripping machine. *(Plaintiff Dep. (Ex. 3) at 76:14-20, 85:2-15, and 233:12 – 234:6; Plaintiff's Answer to Interrogatory No. 6, attached hereto as Exhibit 6.)* Thus, even if Plaintiff's assertion that he received no training while everyone else in the department did is true, it is not probative of any discriminatory intent as other individuals in the department whom he claims were treated more favorably than he are within Plaintiff's protected classes. E.g. Nichols v. Comcast Cablevision of Maryland, Inc., 84 F. Supp. 2d 642, 655 (D. Md. 2000).

Plaintiff claims that he was the only associate permanently assigned to the stripping machine, which he classifies subjectively as a more difficult task which other employees did not want to perform. *(Complaint at ¶ 11; Plaintiff Dep. (Ex. 3) at 92:18 – 93:10 and 157:3-13.)*

11

Plaintiff complains that he was allowed only a 45-minute break while the other employees got an hour. *(Complaint at ¶ 15; Plaintiff Dep. (Ex. 3) at 167:8 – 169:18.)* However, once again, even if these allegations are assumed to be true, all they show is that Plaintiff was treated differently than individuals within his protected classes and are, thus, not probative of Plaintiff's claims of discrimination.

Plaintiff claims that he requested transfers from reconcilement, but that his requests were denied. *(Complaint at ¶ 16.)* However, Plaintiff cannot identify when it was he wanted these transfers or when he made any such request. *(Plaintiff's Answer to Interrogatory No. 8; Plaintiff Dep. (Ex. 3) at 114:16 – 116:1.)* Moreover, Plaintiff can identify only one individual who was transferred out of the department, but does not remember when this was and does not know what she did in order to be granted the transfer. *(Plaintiff Dep. (Ex. 3) at 236:1 – 237:16.)*[7] In addition, Plaintiff claims that he applied for a position in research at some unidentified point a "long time ago" and claims that "friends" told him that Ms. Broughman had blocked him from the position. Plaintiff cannot name those friends, however, and does not know how they might have known this information. (*Plaintiff Dep. (Ex. 3) at 69:10 – 72:5; 72:21 – 74:18; 172:13-19; and 174:16 – 175:13*.) These vague allegations, even if raised timely (which has not been shown by Plaintiff to be the case because he cannot define "long time ago") are not supported by any competent evidence, and thus are simply not probative of any discriminatory intent. Moreover, the undisputed evidence is that in an earlier reduction in force, Ms. Broughman was responsible for saving Plaintiff's position with the Bank. Where, as here, the same individual who responsible for the decision to terminate Plaintiff were the same who was responsible for

---

[6] The Bank denies that this is the case. In fact, Plaintiff was trained on, among other things, the simplest form of reconcilement, but could not retain instructions and was never able to attain an acceptable output. *(Broughman Aff. (Ex. 1) at ¶ 6; Burkhart Aff. (Ex. 2) at ¶ 5.)*

12

providing Plaintiff opportunities, there is a strong presumption against discrimination.  See Middleton v. Frito-Lay, Inc., 68 F. Supp. 2d 665, 670 (D.Md. 1999); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer"); Evans v. Technologies Application & Service Co., 80 F.3d 954, 959 (4th Cir. 1996); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994) ("employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing"); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995).

Plaintiff alleges that as a result of his work on the stripping machine, he was diagnosed with a shoulder sprain and degenerative disease and was placed on light duty by his physician. *(Complaint at ¶ 14.)*  First, Plaintiff admitted in his deposition that his doctor did not definitively tie his shoulder pain to his work.  *(Plaintiff Dep. (Ex. 3) at 162:3 – 164:2.)*  Nonetheless, Plaintiff's doctor did restrict him from lifting over 25 pounds and climbing for the period of a month.  *(Plaintiff Dep. (Ex. 3) at 212:1 – 213:15 and Exhibit 16 thereto.)*  While Plaintiff claims that he was not given that light duty, working on the stripping machine did not require any lifting over 25 pounds and Plaintiff was told not to lift boxes of paper that were over 25 pounds. *(Plaintiff Dep. (Ex. 3) at 158:6 – 159:18; Complaint at ¶ 14; Burkhart Aff. (Ex. 2) at 9.)* Moreover, Plaintiff does not know what positions he believes he should have been assigned to instead of the stripping machine. *(Plaintiff Dep. (Ex. 3) at 166:6 – 167:7.)*

---

[7] In fact, Plaintiff does not know what associates needs to do in order to transfer.  *(Plaintiff Dep. (Ex. 3) at 114:16 – 115:8.)*

In fact, the only evidence which is arguably probative of any discriminatory intent is Plaintiff's claim that on his last day with the Bank, Ms. Burkhart said to him that he was being retired because of his age.[8] In light of the undisputed evidence that the decision to lay off Plaintiff was done in an age neutral manner, and the fact that Ms. Burkhart and Ms. Broughman, the individuals who were responsible for selecting Plaintiff for termination, are older than Plaintiff, this allegation alone is insufficient to carry Plaintiff's burden of establishing that he was selected for the reduction in force because of his age. Demesme v. Montgomery County Government, 63 F.Supp.2d 678, 683 (D.Md. 1999) (noting that the "fact that the decision makers were of the same protected class suggests no discriminatory motivation").

Ultimately, all Plaintiff has to support his claims of discrimination are his own subjective beliefs. However, regardless of how strongly these beliefs are held, they are insufficient to sustain Plaintiff's claims. Evans v. Technologies Application & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) ("Plaintiff's own naked opinion, without more, is not enough to establish" discrimination); Dachman v. Shalala, 46 F.Supp.2d 419, 440 (D. Md. 1999) ("a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief"). Here in order to achieve a reduction in force, Plaintiff's skills and performance in various age, race, and national origin neutral categories was ranked against those of the other eleven associations with whom he worked and he was ranked last in every category. Plaintiff's own conclusory assertions of

---

[8] While it is not relevant for purposes of this Motion, this allegation lacks any ring of credibility. It was not mentioned in Plaintiff's Charge of Discrimination filed with the EEOC or in Plaintiff's Complaint; rather, it was mentioned for the first time in Plaintiff's written discovery responses. During his deposition, Plaintiff testified about his conversation with Ms. Burkhart on the day he was laid off without ever mentioning this statement. Rather, he said that when he asked Ms. Burkhart what was happening, she said "you have been laid off." Then, when he asked her "for what?" she responded that she was not going to have any comment on that or anything like that. *(Plaintiff Dep. (Ex. 3) at 136:7-15.)* In fact, it was only when Plaintiff was asked specifically about the statement in his Answers to Interrogatories that Plaintiff seemed to remember this allegation. Even at that, Plaintiff stated "that is what the people were saying" and then corrected himself to say that is what Ms. Burkhart said. *(Plaintiff Dep. (Ex. 3) at 240:7-21.)* Ms. Burkhart denies that she ever said anything like that to Plaintiff. *(Burkhart Aff. (Ex. 2) at ¶ 11.)*

14

discrimination in and of themselves are insufficient to counter substantial evidence of legitimate, nondiscriminatory reasons for an adverse employment action.  Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989); Gairola, 753 F.2d at 1288.  Summary judgment should therefore be granted in favor of the Bank.

## IV.    CONCLUSION

For the reasons discussed above, the Bank's Motion for Summary Judgment should be granted.  Judgment should be entered in favor of the Bank and against Plaintiff in this matter.

Respectfully submitted,

_____/s/_____

Douglas M. Topolski (Fed. Bar No. 07844)
Elena D. Marcuss (Fed. Bar No. 25547)
McGuireWoods LLP
Seven St. Paul Street, Suite 1000
Baltimore, Maryland  21202
(410) 659-4400

Attorneys for Defendant
Bank of America Corporation

## Appendix of Exhibits

| No. | Description |
| --- | --- |
| 1 | Affidavit of Diane Broughman |
| 2 | Affidavit of Phyllis Burkhart |
| 3 | Select Portions of Deposition of Plaintiff |
| 4 | Affidavit of Tynetta Robinson |
| 5 | Affidavit of Doniel Sutton |
| 6 | Plaintiff's Answers to Interrogatories |

\\LAB\409095.2

16