IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

_____

YEKEEN A. BELLO                          )
                                         )
        Plaintiff                        )
                                         )
        v.                               )     Civil Action No.: AMD 03-493
                                         )
BANK OF AMERICA CORPORATION              )
                                         )
        Defendant.                       )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Comes Now Plaintiff, Yekeen A. Bello, ("Bello"), by and through his undersigned

attorney and opposes Defendant's motion for summary judgment and for cause states that

Defendant is not entitled to summary judgment because Bello has produced sufficient

evidence for a jury to conclude that Defendant has terminated Bello's employment on the

basis of Bello's age, national origin, and/or race.  Further, Defendant has failed to carry its

burden as the moving party to show absence of material facts in dispute in this case. As a

result, there are genuine issues of material facts in dispute between the parties and the

Defendant is not entitled to judgment as a matter of law.

Based on the above stated reasons which are more fully set forth in the supporting

Memorandum of facts and law in Opposition to the Defendant's Motion, the Pleadings and

discovery materials submitted herein, Bello respectfully submits that Defendant's motion for

summary judgment must be denied.

**WHEREFORE** Plaintiff prays that Defendant's Motion for Summary Judgment be denied in its entirety, that Plaintiff has all of the reliefs sought in his complaint, and that this Court grants such other and further relief as it may deem just and proper.

Respectfully submitted,

_____
Fatai A. Suleman, Esquire
Bar #: 14431
AMOROW & KUM, P.A.
7676 New Hampshire Avenue
Suite 315
Takoma Park, MD 20912.
Phone: 301 - 445 - 7800
Fax: 301 - 408 - 0015.

Plaintiff's Attorney.

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

_____

|   |   |
|---|---|
| YEKEEN A. BELLO | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
| BANK OF AMERICA CORPORATION | ) |
|  | ) |
| Defendant. | ) |

Civil Action No.: AMD 03-493

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff, Yekeen A. Bello, ("Bello") by and through undersigned counsel, files

this Memorandum of Law in Opposition to Defendant 's Motion for summary judgment

and states as follows:

**<u>INTRODUCTION</u>**

On June 12, 2002, three days after returning from vacation, Defendant terminated

Bello's employment of more than ten years. He was not given any reason for his

termination and was only given a folder containing Defendant's severance program.

Bello was the only one terminated, and other employees were retained. While Bello was

fifty eight years old at the time he was terminated, all the remaining associates that were

retained by Defendant were under forty years old. Further, while Bello is a black male of

African origin, the retained employees consisted of Caucasians and American born black

individuals.

On or about February 24, 2004, believing that he was a victim of unlawful discrimination, Bello commenced the instant action against Defendant alleging discrimination on the basis of age  in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. Seq., and/or on the basis of his race and African origin in violation of Title VII of the Civil Rights Act of 1964, 44 U.S.C. §§ 2000e, et. seq.

Defendant subsequently filed an Answer and on June 2, 2003, the Court issued a Scheduling Order providing inter alia, for the discovery deadline on October 15, 2003 and the deadline for dispositive pre-trial motions on November 14, 2003. On or about October 15, 2003, Plaintiff filed an Emergency Motion for Extension of Time to Complete Discovery, and the Motion was denied on October 16, 2003.

Now pending before the Court is Defendant's motion for summary judgment. Defendant argues that Bello was discharged as a result of a reduction in force that was caused by an alleged decrease in volume of work in Bello's area, and that Bello was selected for the discharge because he was ranked last in every category in the ranking of the associates. However, as will be demonstrated hereunder, the evidence in the record clearly shows that Defendant is not entitled to summary judgment because Bello can establish a prima facie case of discrimination and Defendant failed to meets its burden of establishing a legitimate non discriminatory reason for its actions.  Further, the reason proffered by Defendant has been shown to be mere pretexts for discrimination against Bello and there is no other evidence on the record which preclude a finding of intentional discrimination against Defendant.

## PLAINTIFF'S FORECAST OF EVIDENCE

Bello is a black man and was born in Nigeria, Africa, on September 9, 1943. *(Plt. Aff. , Exhibit A, ¶ 2.)* He has a Master's degree in Business Administration from Anna Maria College, Paxton, Massachusetts, a Bachelor of Science in Industrial Relations from Southeastern Massachusetts University, Diplomas in General Automotive Service Technology, Diesel Technology Fuel Injection, and he is student-member of the Society of Automotive Engineers. *(Plt. Aff. , Exhibit A, ¶¶ 3- 4, and Exhibits 2, 3, 4, and 5 attached thereto.)*

On or about June 1991, Bello applied for a managerial position with the then Sovran Bank in Maryland. He was hired and promised a salary of $32,000. He was told that he would have to work for about six months before assuming a managerial position. He agreed and started working in the Transit section of the bank. *(Pl. Aff., Ex. A, ¶ 5; Pl. Dep., Exhibit G, pp.16:18-17:8.)* Bello repeatedly demanded from the bank the managerial position that was promised to him. The bank refused to comply. *(Pl. Aff. 5.)*

At the time Bello was working for Sovran Bank, the facility where he was working was located in Hyattsville, Maryland. Later, Sovran Bank was acquired by Nations Bank, and after working with Nations Bank in the Hyattsville office, they moved to Calvert Street, Baltimore. *(Pl. Aff., Ex. A, ¶¶ 6-7.)*

From Transit, Bello was hired into the Reconcilement section by Marie Murrell, one of Defendant's supervisor. According to Bello, it was not Phyllis Burkhart or Diane Brougham that hired him into the Reconcilement section. *(Pl. Aff. ¶ 10.)* When Bello got

3

to the Reconcilement section, he was not trained in other reconcilement functions while other employees were trained despite Bello's request to be trained in reconcilement procedures. *(Pl. Aff. ¶ 11.)* Bello's assertion is corroborated by the record. For instance, in the March 1999 evaluation, Bello stated that he wanted to be trained on subpass, and to be fully trained in reconcilement. *(Associate performance Appraisal Form, Dated March 5, 1999, Ex. 6, pp. 3-4, attached to Pl. Dep., Ex. G.)*

Not only did Defendant failed and/or refused to train Bello on reconcilement procedures, Bello was permanently assigned to work on the stripping machine, a repetitive and difficult job which other employees did not like to do. From the time Bello got to Reconcilement section to the time he was discharged, he was the sole employee permanently working on the stripping machine. *(Pl. Aff. ¶ 12.)* Defendant corroborated Bello's assertion when Phyllis Burkhart state in her affidavit in part as follows:

> **Mr. Bello was finally moved to Reject Re-Entry where he was assigned two primary functions: working the stripping machine . . . and monitoring the printers in the printing room . . .**

*(Affidavit of Phyllis Burkhart, Def. Ex. 2, ¶ 5.)*

As a result of working on the stripping machine, Bello developed serious pain on his left shoulder and was diagnosed with shoulder sprain and degenerative disease by his medical doctor. *(Medical Excuse Slip, Ex. 6, attached to Pl. Aff., Ex. A.)* Even though Bello gave her supervisor the excuse slip, Defendant refused to place Bello on light duty, and he was forced to continued working on the machine. *(Pl. Aff. ¶ 13.)*

4

Subsequently, in April 2002, Bello was diagnosed with cataracts in the left eye and underwent an operation. *(Pl. Aff. Ex. A, and Extracts of Bello's medical records, Exhibit 7, attached thereto.)* Before going for the eye surgery, Bello informed Phyllis Burkhart that he has been scheduled for the eye surgery and requested for about a week to recuperate from the surgery. When Bello returned to work about a week later, he was surprised to learn that Diane Brougham and Phyllis Burkhart had requested that he be put on short term disability even though he had told them he was only going to spend a few days to recuperate. *(Ibid., ¶ 15.)*

After returning from the eye surgery Bello decided to take a vacation to which he was entitled. He completed the leave request form and requested for three weeks. His supervisor, Phyllis Brougham did not like the idea of Bello taking his three weeks vacation at once and wanted Bello to take the vacation piecemeal. Bello informed Ms. Burkhart that he needed the three weeks because he was going out of the country to Africa. *(Ibid., ¶ 17.)*

Bello returned from vacation and on Monday, June 10, 2002, he resumed work with Defendant. He worked his shift on that day and on the following day.

However, on June 12, 2002, the third day of work after coming back from leave, Bello was approached by Phyllis Burkhart who informed him that the President or some other officer wanted to see him. When Bello asked her for the reason, she told Bello that Defendant was retiring Bello because of his age. *(Pl. Int. Ans, Ex. E, pp.8 and 13; Pl. Aff. Ex. A, ¶ 19.)*

Bello was given a folder and a piece of paper to acknowledge that he received the folder. He was not given any reason for his discharge, and he was not informed of any reduction in force by the Defendant. *(Pl. Aff. ¶ 19.)* Bello was then escorted out of the office even though he posed no  threat or risk to anyone. *(Pl. Ans. to Def. Int., Exhibit E, p.10.)*

According to Bello, throughout the time he was working in the Reconcilement section up to the time he was terminated, there was no reduction in volume of work whatsoever, and that Phyllis Burkhart and Diane Brougham made up the excuse to find a reason to terminate his employment. *(Pl. Aff. ¶ 21.)*

Further, until Bello was terminated by Defendant, Bello was not informed that he was not meeting Defendant's expectations and he received merit increases and awards from Defendant. *(Pl. Aff. Ex. A, and Exhibit 8 attached thereto.)* Defendant offered Bello a severance package which offer required that Bello was successfully performing his job *(Pl. Aff. Ex. A, and Exhibit 9, excerpts of Defendant's Guide to Corporate Severance Program attached thereto.)* The Associate Information form completed by both Phyllis Burkhart and Diane Brougham for Bello termination indicates Bello was eligible for rehire. To qualify for rehire, the terminated employee must have satisfactory work performance. *(Pl. Aff. Ex. A, and Exhibit 10 attached thereto.)*

When Bello was terminated the folder he was given by Defendant included a document titled "Identification Data Sheet." *(Exhibit 11.)* This document shows that all the employees not selected for eliminations were under forty years of age at that time.

6

The employees that were retained consisted of Caucasians and American born individuals.

### STANDARDS REGARDING SUMMARY JUDGMENT MOTIONS

Fed. R. Civ. P. 56(c) provides the general standard for determining a motion for summary judgment. It provides that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.Civ.P. 56(c).

A defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). Where, as in the case at bar, the nonmoving party will bear the ultimate burden of persuasion at trial, the moving party must demonstrate to the court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, supra, at 325 (1986).

The allegations in plaintiff's complaint and his forecast of evidence must be taken as true, and all inferences therefrom must be drawn in his favor. Anderson, at 255, and as the Supreme Court indicated in Anderson, determining credibility, weighing evidence and drawing inferences are matters reserved exclusively for the finder of fact at trial, not on summary judgment. 477 U.S. at 255. Thus, in resolving a summary judgment motion,

7

the court must look beyond the pleadings and determine whether there is a genuine need for trial. See, <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). An issue of fact must be both genuine and material in order to forestall summary judgment. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the plaintiff. See, <u>Anderson,</u> 477 U.S. at 248. An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law. See id.

Finally, summary judgment is an extreme remedy which should not be entered except where movant is entitled to its allowance beyond all doubt. <u>City Nat. Bank of Fort Smith, Ark. V. Vanderboom</u>, 422 F.2d 221 cert. denied 90 S.Ct. 2196, 399 U.S. 905, 26 L.Ed.2d 560. Further, the court "must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue." <u>Evans v. Technologies Applications & Serv. Co.,</u> 80 F.3d 954, 958 (4th Cir. 1996) and the court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." <u>Anderson,</u> 477 U.S. at 255.

## <u>STANDARDS REGARDING PROOF OF UNLAWFUL DISCRIMINATION</u>

An employee can prove the employer's discriminatory intent either under the ordinary principles of proof using any direct evidence or by way of scheme of proof judicially developed for Title VII cases in <u>McDonnell Douglas Corp. v. Green,</u> 411 U.S. 792, 36 L.Ed. 2d 668, 93 S.Ct. 1817 (1973). This framework has been adapted for use in ADEA cases. <u>Lovelace v. Sherwin-Williams Co.,</u> 681 F.2d 230, 239 (4th Cir. 1982).

8

Under this frame work, the plaintiff has the initial burden of proof by a preponderance of the evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). The burden of such a prima facie case is not onerous, Burdine, at 253, and as stated in Young v. Lehman, 748 F2d 194, 197 (4th Cir. 1984), it is a "relatively easy test."

If a plaintiff establishes a prima facie case, the defendant's burden of production is to articulate, through admissible evidence, a legitimate and nondiscriminatory reason for its actions. While the defendant does not have the burden to persuade the court that it was actually motivated by the proffered reasons, it must produce enough admissible evidence to raise a genuine issue of fact. Burdine, 254-255; Ross v. Comm. Satellite Corp. 759 F.2d 355, 365 (4th Cir. 1985). Upon such a showing by the defendant, the burden shifts back for the plaintiff to show that the proffered reasons are pretextual.

However, while it is beyond dispute that the order of proof laid out in McDonnell Douglas is an orderly way of evaluating evidence, the elements of a prima facie case depend on the facts of the particular case. Thus, a prima facie case cannot be established on a one-size-fits-all basis, Jones v. School Dist. Of Phila. 198 F.3d 403 (1999), and as it was observed in Page v. Bolger, 645 F. 2d 227 (4th Cir. 1981), the McDonnell Douglas proof scheme is not to be given a wooden application that loses sight of its essential purpose as a sensible, orderly way to evaluate evidence.

Because of the differences in the facts and circumstances of the cases, the order of proof, and consequently, the formulations of the elements of a prima facies case are not the same. Thus, the elements of a prima facie case in a reduction in force case are stated

9

differently from a non-reduction in force cases.

**ARGUMENT**

A.    **BELLO CAN ESTABLISH A PRIMA FACIE CASE OF AGE, RACE AND/OR NATIONAL ORIGIN DISCRIMINATION.**

As a preliminary matter, Plaintiff disagrees with Defendant that this case is a reduction in force case.  As a result, Plaintiff contests the formulation of the elements of a prima facie case in a reduction in force context as stated by Defendant. This case is not a proper reduction in force case and as such, the non-reduction in force prima facie scheme is the  appropriate method in to be utilized.

It is not disputed that the facility where Bello worked has three shifts. That it has five areas within each shifts. It is also not disputed that it was only Bello that was laid off by Defendant. *(Def. Int. Ans., Exhibit C, p.9, ans. no.15.)* In O'Connor v. Consolidated Coin Caterers Corporation, 56 F.3d 542, 1995 U.S. App. LEXIS 9084, where the reduced force consisted of two people, the Fourth Circuit held that it was not appropriate to treat the case as a reduction in force case. Accordingly, Plaintiff will analyze the case on a non reduction in force context.

The proper prima facie case which a plaintiff must establish is the following:

(1) he is a member of a protected class
(2) he was qualified for his job and her job performance was satisfactory.
(3) he suffered adverse action, and
(4) other similarly situated employees who were not members of the protected class did not suffer adverse action.

See, Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); Mentch v. Eastern Savings

Bank, FSB, 949 F.Supp. 1236, 1244 (D.Md. 1997);

Defendant concedes that Bello can establish that he is a member of various protected classes, and that Bello suffered adverse action.[1] As a result, the only remaining elements are that: (2) he was qualified for his job and his job performance was satisfactory, and (4) other similarly situated employees who were not members of the protected class did not suffer adverse action.

Evidence on the record clearly established that Bello was qualified for his job and that his performance was satisfactory. The fact that he worked for Defendant for more than a decade testifies to his qualification for his position. Bello received merit increases and awards, he was offered a severance package which requires satisfactory performance, and he is eligible for rehire, which also indicate he was performing his job successfully. (*See, Pl. Aff. Ex. A, and Exhibits 8, 9, and 10 thereto.*) Indeed, the so-called merit ranking performed by Defendant show that Bello was meeting expectations. *(Def. Ranking-Twilight Reject Repair, Exhibit F.)*

To the extent that Defendant attempts to discredit Bello's performance by references to evaluations purportedly done by Lou Mont as far back as 1996, *(Ex. 3, attached to Pl. Dep., Ex. G.)*, it is to no avail because the relevant period in determining whether an employee is meeting the employer's legitimate expectations at the time of the discharge. See, O'Connor v. Consolidated Coin Caterers Corporation, supra.

The last element of a prima facie case is for Bello to show that other similarly

---

[1] Def. memorandum, p.9

11

situated employees who were not members of the protected class did not suffer adverse

action. Bello can readily do so. Defendant itself admitted that it was only Bello that was

terminated. All the employees not terminated were under forty years old, *(Ex. 11*

*attached to Pl. Aff. Ex. A.)* In addition, all the employees not terminated were either

Caucasians or American born individuals. Defendant strives to classify Bello as African

American. This is not correct. Bello is in a separate class of a black person born in

Africa, a distinct class from American born African Americans.

At this point, it is pertinent to point out that Defendant has produced contradictory

and inconsistent records of the employees that were not selected for termination. While

the Identification Data Sheet, *(Ex. 11 attached to Pl. Aff.),* given by Defendant to Bello

on his termination, does not have any employee of forty-six years old, Defendant's

Answers to Plaintiff's Interrogatories, *(Pl. Ex. C, p.11),* and the Affidavit of Doniel

Sutton, *(Def. Ex. 5.)* Included two employees who were forty-six years old. The

permissible inference is that Defendant  included the two forty-six years old employees

in a questionable move to show that other employees who are within Bello's protected

class were not affected. It is of no avail to Defendant.

In Texas Dept. of Community Affairs v. Burdine, supra, the Supreme Court stated

that the "burden of establishing a prima facie case of disparate treatment is not onerous."

450 U.S. at 253. "Direct evidence of a [a defendant's discriminatory intent] is rare;

therefore, plaintiffs must ordinarily prove their claims through circumstantial evidence."

Harrington v. Harris, 118 F.3d 359, 367 (5th Cir.) Cert. denied, 522 U.S. 1016, 139 L.Ed.

2d 491, 118 S.Ct. 603 (1997). "Above all, courts will look at evidence of discrimination

not in splendid isolation, but as part of an aggregated package of proof offered by the

plaintiff." Mesnick v. General Electric Co., 950 F.2d 816, 824 (1st Cir. 1991).

Consequently, based on the above, it is respectfully submitted that Bello has presented

sufficient evidence to permit a reasonable jury to find that Bello has established a prima

facie case on all of his claim. Such a prima facie case is not an onerous one. Burdine,

supra, at 253. It is a "relatively easy test." Young v. Lehman, supra, at197.

## B.     BELLO CAN ALSO ESTABLISH A PRIMA FACIE CASE IN A REDUCTION IN FORCE CASE

Bello submits that even if his case is analyzed under a reduction in force context,

he can still establish a prima facie case. The elements of such a prima facie case require

the plaintiff to show that (1) he is a member of a protected group, (2) he was selected for

discharge from a larger group of candidates, (3) he was performing his job at a level that

met his employer's legitimate expectations, and (4) that the residual workforce produced

by the selection process contained some unprotected employees who were performing at

a level lower than him or that the employer did not treat age neutrally in selecting him for

discharge. See, Stile v. General Electric Co., 1993 U.S. App. LEXIS 2870, citing

Conkwright v. Westinghouse Electric Corp., 933 F.2d 231 (4th Cir. 1991), citing EEOC v.

Western Elec. Co., 713 F.2d 1011, 1014-15 (4th Cir. 1983); Duke v. Uniroyal, Inc., 928

F.2d 1413 (4th Cir.), cert.denied, 116 L.Ed 2d 449, 60 U.S.L.W. 3359, 112 S.Ct. 429

(1991).

As argued above, Bello can show that he was meeting Defendant's legitimate expectations. Defendant's assertion to the contrary is an attempt to cover its unlawful discrimination against Bello.

Further, concerning element (4) that the residual workforce produced by the selection process contained some unprotected employees who were performing at a level lower than him or that the employer did not treat age neutrally in selecting him for discharge. Bello can make a prima facie case by showing that Defendant did not treat age neutrally because one of the documents given to Bello when he was terminated indicates that Defendant did not treat age neutrally when it made the decision to discharge Bello. *(See Ex. 11, Identification Data Sheet, attached to Pl. Aff. Ex. A.)* The said document contains the ages of employee, Bello, that was affected, and the age of the other associates that were not affected by the discharge. This clearly shows that Defendant did not treat age neutrally. In addition, according to Bello, on the day he was terminated, Ms. Brougham told him that he was being retired because of his age. *(Ex. E, Pl. Ans. to Def. Int., p.8, no.10) (Pl. Aff. ¶ 19.)*

In the alternative, Bello requests that Defendant be precluded from asserting a defense that Bello could not establish that the remaining associates not selected contain some unprotected persons who were performing at a level lower than that at which he was performing. During discovery, Defendant was requested to produce the personnel file of the employees in the Plaintiff's Department that were not affected by the lay off or job elimination. Defendant objected to the Request on the ground that it could not tell

14

what Plaintiff considered to be his "department." *(Def. Res. to Doc. req., Ex. D, pp.3-4,*
*no. 3.)* This is a dilatory discovery tactics by Defendant. When Defendant was asked by
way of Interrogatories to identify the other employee in the department or unit where
Plaintiff worked that were not affected, Defendant provided identified associates in
Twilight Reject Repair without contesting that it does not know what Plaintiff mean by
"department." *(Def, Int. Ans., Ex. C, p.11, no.18.)*

  Defendant now argues that Bello cannot show that he was performing at a level
substantially equivalent to the lowest of the associates retained because Bello allegedly
admitted in his deposition that he was not familiar with the job performance of the other
employees or that he could not identify anyone else whom he believes should have been
laid off instead of him. This argument is of no avail to Defendant. Bello's opinion as to
the quality of his co-workers' work is basically irrelevant. As the Fourth Circuit has held,
when considering whether an employee met legitimate expectations of the employer, a
co-worker's opinion as to the quality of the employee's work is practically irrelevant.
See, Hawkins v. Pepisco, Inc., 203 F.3d 274, 280 (4th Cir.), cert denied, 531 U.S. 875,
121 S. Ct. 181, 148 L.Ed. 2d 125 (2000). On the other hand, if Defendant had complied
with Bello's legitimate discovery request and produce at a minimum, the evaluations of
the retained associates, Bello would have had a basis to compare his performance with
the retained employees.

  Consequently, Bello submits that he can establish the fourth element of a prima
facie case in a reduction in force context by the evidence discussed above, showing that

Defendant did not treat age neutrally in making its decision. If however, the Court considers that this case involves a genuine reduction in force case, and the Court is not persuaded that Bello has produced sufficient evidence showing that Defendant did not treat age neutrally, Bello respectfully requests the Court for an order compelling Defendant to produce the personnel records of the retained employees and for an order allowing Bello to supplement his opposition to Defendant's motion with those documents.

**C.    DEFENDANT HAS FAILED TO CARRY ITS BURDEN OF INTRODUCING LEGITIMATE REASON FOR TERMINATING BELLO**

Because Bello has established a prima facie case of discrimination, the burden shifts to Defendant to rebut the inference created by plaintiff. The nature of Defendant's burden of  production is to articulate, through admissible evidence, a legitimate and nondiscriminatory reason for its actions. While the defendant does not have the burden to persuade the court that it was actually motivated by the proffered reasons, it must produce enough admissible evidence to raise a genuine issue of fact. Burdine, 254-255; Ross v. Comm. Satellite Corp. 759 F.2d 355, 365 (4th Cir. 1985).

Defendant state that Bello was discharged as part of an alleged reduction in force of one part time associate. However, Defendant woefully failed to produce any competent evidence to show that Defendant was engaged in reduction in force. The totality of the evidence offered by Defendant consisted of hearsay affidavit evidence of Phyllis Burkhart and Diane Brougham.  In her affidavit, Ms. Burkhart states as follows:

16

"In May 2002, I was informed that the number of associates in Twilight reject Re-Entry was to be reduced by one part time associate." *(Phyllis Burkhart Aff., Def. Ex. 2, ¶ 10.)* Further, Ms. Brougham merely stated that "In the first half of 2002, in an effort to reduce costs, Item Processing identified areas which staffing could be reduced . . ." *(Diane Brougham Aff. Def. Aff. Ex. 1.)* Both statements are clearly inadmissible hearsay. Moreover, while Ms. Burkhart state that she was "informed" about this reduction in May 2002, Ms. Brougham vaguely references "first half of 2002." There is simply no iota of evidence from which the court could determine if Defendant was engaged in reduction in force at the time Bello was terminated.

In addition, Defendant states that the reduction in force to be effected is one "part time associate." *(Def. In. Ans., Ex. C, p.3, no. 2.)* According to Bello, at the time of his discharge, he was working thirty-two hours per week. *(Pl. Aff., Ex. A ¶ 28.)* By Defendant' own definition, a part time associate is one whose weekly projected average hours are twenty or more but fewer than what is considered full-time for the position. *(Excerpts of Def. handbook, Ex. 12, attached to Pl. Aff. Ex. A.)* Defendant failed to introduce any evidence to show that Bello was a part-time employee whose position was eligible to elimination.

Because Defendant has woefully failed to meet its burden of rebutting Bello's prima facie case, Defendant's motion for summary judgment should be denied by the Court.

17

**D.    SUFFICIENT EVIDENCE EXISTS FOR A JURY TO CONCLUDE THAT DEFENDANT'S REASON WAS A  PRETEXTS FOR UNLAWFUL DISCRIMINATION.**

However, in this case, even if the Court is not persuaded that Defendant has failed to carry its burden of stating a legitimate nondiscriminatory reason for its action by way of admissible evidence, Defendant's motion for summary judgment must still fail because there is abundant evidence that Defendant's  proffered reason is merely a cover for unlawful discrimination against Bello. The evidence of pretexts are as follows:

(1) First, there is a general lack of objective evidence to show that there was a need for reduction in force of just one employee. Defendant claim that the reduction was necessitated because of a reduction in volume of work. There is simply no evidence of such a reduction of volume of work. Bello, working thirty-two hours per week at $8.40 an hour earns less than $14,000 per year and Defendant will find it difficult, if not highly impossible, to convince any reasonable jury that its action was necessitated by purely business reason. Such evidence of lack of genuine business decline creates inference of pretext. See, Hillebrand v. M-Tron Ind., 827 F.2d 363 (8th Cir. 1987), cert. den. 488 U.S. 1004, 109 S.Ct. 782.

(2) Another evidence of pretext is that Bello was not offered another position by Defendant. Defendant has a policy of making job offers to employees whose positions were eliminated. *(see Ex. 9, Excerpts of Def. Guide to Corporate Severance Program, attached to Pl. Aff., Ex. A.)* Defendant also admitted that in a previous reduction in force, the associates whose positions were being eliminated were given a time period during

18

which they were allowed to post for other positions. *(See, Diane Brougham Aff., Def. Ex. 1, ¶ 5.)* Defendant admitted it did not offer any other position to Bello. *(Ex. C, Def. Ans. to Pl. Int., p.9.)* Failure to follow established procedures with respect to discharge has been held to support a finding of discriminatory discharge. Hamilton v. 1st Source Bank, 895 F.2d 159, 162 (4th Cir. 1990). In Gonzalez v. Royal Indemnity Co., 1999 U.S. App. LEXIS 33560, the Fourth Circuit vacated and remanded the district court decision holding in part that the plaintiff in that case raised a legitimate question as to whether the defendant followed its own procedures in the elimination.

(3) Even if it is assumed that there was indeed a genuine business necessity that warranted a position to be eliminated, there are other alternatives available to Defendant instead of laying off an employee. For instance, Defendant could have reduced the hour of all the associates. Evidence of availability of a less discriminatory alternative may establish pretext. See, McCabe v. Champion Int. Corp., 916 F.2d 713 (6th Cir. 1990); Hinton v. Board of Trustees of University of Illinois, 53 BNA FEP Cas 1475 (1990, ND Ill.)

(4) Furthermore, Defendant did not follow the usual seniority-based approach to a lay off decision instead of its alleged skill-based evaluation. Even then, Defendant did not provide any reason as to why it could not use the evaluations already on file for the associates. Not only that, the so-called ranking was done at a time when Bello was away on leave by his supervisor and manager that were clearly hostile to Bello and there is no evidence of how the associates were evaluated to arrive at the ratings.

19

(5) The circumstance under which Bello was terminated is highly probative of pretext. Bello, an employee of more than ten years, was basically unceremoniously kicked out of the office. He was not even allowed to retrieve his personal items and he was escorted out of the building. Bello, an employee of more than ten years who was not accused of any criminal act or misconduct, certainly deserves better treatment from Defendant.

Based on the foregoing, Bello submits that the alleged Defendant reason of reduction in force was a mere pretext for Intentional discrimination against him on the asserted grounds. As stated in St. Mary's Honor Center v. Hicks, 509 U.S. 502, the fact finders disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of plaintiff's prima facie case, suffice to show intentional discrimination. The rejection of the defendant's preferred reasons will permit the trial of fact to infer the ultimate fact of intentional discrimination and upon such rejection, no additional proof of discrimination is required. St. Mary's Honor Center, at 511.

Further, the U.S. Supreme Court, in Reeves v. Sanderson Plumbing Products, Inc., 530, U.S. 133, granted certiorari to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation, is adequate to sustain a finding of a liability for intentional discrimination. It held that it does, noting however, that it does not always do so as there may be instances

20

where no rational fact finder could conclude that discrimination occurred.

The Fourth Circuit decision in <u>Rowe v. The Marley Co.</u>, 233 F.3d 825 (2000), is in accord with <u>Reeves</u>. While the <u>Rowe</u> court also observed that even though a plaintiff establishes a prima facie case and pretext, it does not automatically create a jury question, the court however recognizes that it may do so and only state that such a plaintiff's case should not be submitted to the jury if there is "evidence that precludes a finding of discrimination." Rowe, at 830.

In this case, however, Bello submits that he has presented sufficient facts to overcome his burden of proof in defeating Defendant's Motion for Summary Judgment because disputed material facts  and evidence of pretext have been presented sufficient for the jury to infer that he was subjected to unlawful discrimination on the asserted grounds by the Defendant.

Moreover, not only is there an absence of evidence precluding a finding of intentional discrimination against Defendant, the remaining evidence on the record supports a reasonable inference of intentional discrimination by Defendant. As stated earlier, one of the documents given to Bello when he was terminated indicates that Defendant did not treat age neutrally when it made the decision to discharge him. *(See Ex. 11, Identification Data Sheet, attached to Pl. Aff. Ex. A.)* The said documents contain the ages of the employee, Bello, that was affected, and the age of the other associates that were not affected. This clearly shows that Defendant did not treat age neutrally. In addition, according to Bello, on the day he was terminated, Ms. Brougham told him that

21

he was being retired because of his age. *(Pl. int. Ans. Ex. E, p.8, no.10) (Pl. Aff. ¶ 19.)* Moreover, because of Bello's medical problems involving his diagnosis with degenerative disease of the left shoulder, and his cataract operation, the Defendant considered Bello to be a liability.

Not only that, the record is replete with evidence of disparate treatment against Bello before he was terminated. At one time, Ms. Brougham, who participated in terminating Bello, called Bello a "dummy" to his face. *(Ex. E, Pl. Ans. to Def. Int., p.8, no. 11.)* Significantly, Ms. Brougham did not deny this incident in her affidavit.

In addition to the above, during the course of his employment, Bello complained that Defendant refused to train him in reconcilement procedures while others were trained, he was the only one made to work on the stripping machine which no other employee like to work on, that he was allowed only a forty-five minute break while the other employees got an hour, and that he was not allow to transfer while other employees were allowed to do so. *(Pl. Aff. Ex. A; Ex. E, Pl. Int. Ans.; Pl. Dep., Ex. G.).* Bello's position is amply corroborated by his spouse, Adi Bello. *(See, Adi Bello Affidavit, Ex. B.)*

Defendant claims that Plaintiff's various complaints of disparate treatments are not probative of discriminatory intent because other individuals in the department whom he claims were treated more favorably than he are within his protected classes. Defendant is wrong. With respect to Bello's age discrimination, the documents clearly show that the remaining employees were under forty-years old. Even if the two employees that were not in the original list given to Bello were counted, the record still show that there are

nine other employees who were not within that class. In addition, the remaining associates who are African Americans born in the U.S. are also not within Bello's protected class of African Americans who were born in Africa.

Defendant also wrongly stated that because Ms. Brougham was responsible for saving Bello's position in a previous reduction in force, there is a strong presumption against discrimination. First, Bello disputes that it was Ms. Brougham who hired him into the Reconcilement section. In any case, Defendant failed to show when this alleged previous reduction in force took place. The totality of the evidence of the alleged previous reduction consists of Ms. Brougham stating that the reduction was "a few years after Mr. Bello came to the Baltimore Operations Center . . . " This is fatal to Defendant's claim because the presumption only arises when the termination occurs "within a relatively short time span following the hiring." Defendant is therefore not entitled to that presumption.

Finally, Demesme v. Montgomery County Government, 63 F.Supp.2d 678, 683 (D.Md.1999) cited by Defendant for the proposition that the fact that the decision makers were of the same protected class suggests no discriminatory motivation is of no help to Defendant. First, Defendant failed to properly establish the ages of Ms. Burkhart and Ms. Brougham and there is a lack of any admissible evidence as to the ages of both Ms. Burkhart and Ms. Brougham. The only evidence on record are the affidavit evidence of both Ms. Burkhart and Ms. Brougham as to their date of births. Such statements are hearsay because they lack personal knowledge of when they were born. In any case,

what the notion states is that the fact that the decision makers and the victim of discrimination are members of the same protected class suggests no discriminatory motivation. The notion does not state that the fact precludes a finding of intentional discrimination.

**E.    MATERIAL DISPUTES OF FACTS EXIST, COMPELLING A DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

It is well settled that the purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or resolve dispute. In reaching that conclusion, the Court should resolve all inferences against the moving party.

The initial burden is on the party moving for summary judgment to show absence of genuine material facts in dispute. An issue of fact must be both genuine and material in order to defeat a motion for summary judgment. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the Plaintiff. See, Anderson, 477 U.S. at 248. An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law.

Bello respectfully submits that based on the facts and circumstances of this case described above, there are numerous genuine material facts in dispute between the parties the existence of which precludes summary judgment in Defendant's favor. For instance, it is disputed that Defendant was engaged in a bona fide reduction in force when Bello was terminated. It is disputed that Bello was not meeting Defendant's legitimate

24

expectations at the time he was terminated. It is disputed that Defendant treated age in a

neutral fashion in reaching its decision to terminate Bello's employment, and it is

disputed that the alleged ranking used by Defendant in selecting the employee to be

discharged is objective and free of illegal motives of discrimination.

## **CONCLUSION**

By reasons of the foregoing, Plaintiff respectfully submits that Defendant's

motion for summary judgment must be denied in its entirety.

Respectfully submitted,

_____

Fatai A. Suleman, Esquire
Bar #: 14431
AMOROW & KUM, P.A.
7676 New Hampshire Avenue, Suite 315
Takoma Park, MD 20912.
Phone: 301 - 445 - 7800.

Plaintiff's Attorney.

Dated December 1, 2003

25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

_____
                                          )
YEKEEN A. BELLO                           )
                                          )
        Plaintiff                         )
                                          )
        v.                                )        Civil Action No.: AMD 03-493
                                          )
BANK OF AMERICA CORPORATION               )
                                          )
        Defendant.                        )
_____)

## <u>ORDER</u>

UPON Consideration of Defendant's Motion for summary judgment and

Plaintiff's Opposition thereto, it is this_____day of _____2003, by

the United States District Court for the District of Maryland,

**ORDERED,** that the Motion is hereby DENIED in its entirety.


                              _____
                              The Honorable Andre M. Davis
                              U.S. District Court Judge