IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YEKEEN A. BELLO,                    *

      Plaintiff,                    *

v.                                 *        Civil Action No. AMD 03-CV-493

BANK OF AMERICA CORPORATION,       *

      Defendant.                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

**DEFENDANT BANK OF AMERICA CORPORATION'S REPLY TO PLAINTIFF'S
OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Bank of America Corporation (the "Bank"), through undersigned counsel, respectfully submits this Reply to Plaintiff's Opposition to the Bank's Motion for Summary Judgment. For the reasons set forth below, as well as those set forth in the Bank's Memorandum in Support of the Motion for Summary Judgment ("Memorandum") incorporated herein by reference, Plaintiff has failed to raise any genuine issue of material fact which could preclude judgment in favor of Defendant as a matter of law. Accordingly, the Bank's Motion for Summary Judgment ("Motion") should be granted and judgment should be entered in favor of the Bank and against Plaintiff.

## I.    SUMMARY JUDGEMENT STANDARDS

Plaintiff cites <u>City National Bank of Fort Smith, Arkansas v. Vanderboom</u>, 422 F.2d 221 (8th Cir. 1970), for the proposition that summary judgment is an "extreme remedy and that it should not be entered except where the movant is entitled to its allowance beyond all doubt." *(Opposition at 8.)* To the extent that was a proper statement of the standard in 1970, it is not now. The present standard was set for by the Supreme Court in 1986. "Summary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). As the Court explained, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id., 477 U.S. at 322.  Courts have an affirmative obligation to prevent factually unsupported claims from proceeding to trial.  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  "A defendant … should not be required to undergo the considerable expense of preparing for and participating in a trial unless the plaintiff has produced evidence on which a jury might rely in support of the claims alleged." Ramsey v. Toyota Motor Sales, U.S.A., Inc., 1995 WL 871835, *5 (D.Md. 1995) (quoting E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A., 678 F. Supp. 567, 573 (D.Md. 1988)).

The Supreme Court in Celotex Corp. wrote:

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Id., 477 U.S. at 323.  The moving party's "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleasing, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id, 477 U.S. at 323.  This

burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence to support the nonmoving party's case." Id., 477 U.S. at 325.

Plaintiff cites Evans v. Technologies Applications & Service Co., 80 F.3d 954, 958 (4th Cir. 1996), for the proposition that a court "'must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue.'" *(Opposition at 8.)* However, the remainder of the sentence from which Plaintiff quotes reads: "summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans, 80 F.3d at 958-59. As it did in Evans, Fourth Circuit has often affirmed a grant of summary judgment despite a plaintiff's assertion of discriminatory motive where, as here, such assertion is not supported by admissible evidence. "Unsupported allegations as to motive do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 459 (4th Cir. 1989) (noting that a plaintiff's own assertions of discriminatory intent are insufficient to defeat summary judgment).

Further, Plaintiff states that the Court must take as true for purposes of summary judgment the "allegations on plaintiff's complaint and his forecast of evidence." *(Opposition at 7.)* Plaintiff is wrong again. It is beyond dispute that Plaintiff cannot rely on the allegations of his Complaint alone. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings….") It is also clear that Plaintiff cannot rely on a "forecast" of evidence, but rather must "present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F.Supp.2d 559, 564 (D. Md. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (emphasis added).

These specific facts identified by Plaintiff must be evidentiary facts, that is admissible at trial. See Fed. R. Civ. P. 56(e); Malina v. Baltimore Gas and Electric Co., 18 F.Supp.2d 596, 604 (D. Md. 1998); Phair v. Montgomery County Public Schools, 3 F.Supp.2d 644, 645 (D. Md. 1997). The affidavits and other similar evidence, including answers to interrogatories, relied upon to oppose summary judgment must be made on personal knowledge and affirmatively show that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e). Moreover, the Court is required to believe and draw all justifiable inference from only evidence, not a forecast of evidence. Anderson, 477 U.S. at 255.

Finally, it should be remembered that the nonmoving party must produce more than a mere scintilla of evidence: "If the evidence is merely colorable, or not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50; 106 S.Ct. at 2511; Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Applying the correct standards to the Bank's Motion, it is clear that summary judgment should be granted in favor of the Bank.

## II.    DISCUSSION

Plaintiff's Opposition does not identify any admissible evidence in support of his claims against the Bank. Plaintiff still fails to identify anyone who was retained whom he believes should have been laid off instead of him or whose performance was less satisfactory than his. Ultimately, Plaintiff's case boils down to his own beliefs that the Bank might not have had to reduce manpower in his group, as his salary was not terribly great, and that the Bank should have just kept him on or maybe found him another position. However, none of this comes close to

establishing that the Bank's decisions were in any way related to Plaintiff's race, national origin, or age.  Defendants' Motion should therefore be granted.

## A.    Plaintiff Cannot Establish A Prima Facie Case Under Any Standard on Any Basis

Plaintiff disputes the appropriateness of the Bank's reliance on reduction in force cases and the prime facie elements identified therein.  Plaintiff nonetheless argues that he can establish a prima facie case under either theory.  Plaintiff is incorrect on both counts.

### 1.    The Elements of A Prima Facie Case

Plaintiff argues based upon O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542 (4th Cir. 1995), that this matter should not be analyzed as in the context of a reduction in force, but rather should be analyzed upon the traditional prima facie scheme.  *(Opposition at 10.)*  A review of the Court's reasoning in O'Connor (an age discrimination case) demonstrates that it is inapplicable here.

In O'Connor, the Fourth Circuit noted that in order to establish a prima a prima facie claim of age discrimination a plaintiff must generally establish that:

(1)  he is in the protected age group;
(2)  he was discharged or demoted;
(3)  he was performing his job at a level that met his employer's legitimate expectations; and
(4)  following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class.[1]

O'Connor, 56 F.3d at 546.  However, because in the circumstances of a reduction in force plaintiffs typically have difficulty establishing by whom they were replaced, a modified prima facie standard for reduction in force cases has been developed.  Under the modified standard for reduction in force cases, a plaintiff must establish:

---

[1] On appeal, the Supreme Court held that the comparator need not necessarily be outside of the class protected by the ADEA, that is under 40 years of age, but rather must be substantially younger than the plaintiff.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996).

(1)  he was a member of the protected class;
(2)  he was selected for discharge from a larger group of candidates;
(3)  he was performing at a level substantially equivalent to the lowest level of those of the group retained; and
(4)  the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.

O'Connor, 54 F.3d at 546.  However, the Fourth Circuit found that such occurrences were not implicated there because O'Connor's replacement was readily identifiable.

Prior to his termination, O'Connor had been one of four general managers.  As part of a restructuring, O'Connor was discharged, another general manager was demoted, and O'Connor's responsibilities were re-assigned to one of the remaining two general managers.  As stated by the Fourth Circuit, O'Connor was "essentially replaced."  Id., 56 F.3d at 546.  The Fourth Circuit held that under those circumstances the reduction in force standard was less useful.  Id., 56 F.3d at 546.  See also Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993) (noting that in the reduction in force context "the third and forth elements outlines in [the non-reduction in force test] become meaningless" because "employees at the time of a reduction-in-force are usually meeting the employer's performance expectations, and … the employees generally are not replaced").

This case, however, is not like O'Connor.  Plaintiff was not replaced.  In fact it is undisputed that no one has been hired for Twilight Check Processing since Plaintiff was laid off.  *(Broughman Aff. (Ex. 1) at ¶ 9.)*  This fact alone is fatal to Plaintiff's age discrimination claim under the non-reduction in force standard set forth in O'Connor, that generally employed in age discrimination cases.[2]

---

[2] E.g. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998); Pfeifer v. Lever Brothers Co., 693 F. Supp. 358, 363 (D. Md. 1987).

Plaintiff nonetheless believes that his claim should be analyzed in the non-reduction in force context using the elements generally used in Title VII cases.  In Hughes v. Bedsole, 48 F.3d 1376 (4th Cir. 1995), a sex discrimination case, the Fourth Circuit held that a plaintiff must establish that:

(1)  he is a member of a protected class;
(2)  he was qualified for her job and his job performance was satisfactory;
(3)  he was fired; and
(4)  other employees who are not members of the protected class were retained under apparently similar circumstances.

Hughes, 48 F.3d at 1383.  See also Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (describing the fourth element as requiring "the plaintiff to show his position remained open to similarly qualified applicants after his or her termination").

Whatever construct of the standard is utilized, however, Plaintiff's evidence falls short of establishing a prima facie case of race, national origin or age discrimination.   Plaintiff's Opposition is based entirely upon Plaintiff's subjective belief unsupported by any objective, admissible evidence and his refusal to accept the undisputed facts.  In the end, it is clear that Plaintiff has not educed a shred of evidence to support his claim that he was discriminated against on the basis of his race, national origin, or age.

### 2.    Plaintiff's Job Performance Was Not Meeting the Bank's Legitimate Expectations

Under any prima facie standard, Plaintiff must establish that his job performance was meeting the Bank's legitimate expectations.   As the Fourth Circuit noted on remand in O'Connor, the requirement that the plaintiff establish that at the time of his discharge he was performing his job at a level that met his employer's legitimate expectations is "nearly identical" to the requirement that the plaintiff establish that he was performing at a level substantially equivalent to the lowest level of those of the group retained and "demand[s] that [the plaintiff]

proffer essentially the same evidence." <u>O'Connor v. Consolidated Coin Caters Corp.</u>, 84 F.3d 718, 719 (4th Cir. 1996).

Here, the undisputed evidence establishes that at the time of Plaintiff's discharge Plaintiff's job skills and performance were considered by Ms. Broughman and Ms. Burkhart to be substantially inferior to those of the other eleven associates in his group. *(Memorandum at II.C.)* In addition, Plaintiff's job performance had been rated below expectations in the two performance evaluations Plaintiff received since 1997 and he had been counseled about his productivity and behavior. *(Memorandum at II.B. pp. 5-6.)* Plaintiff does not present a shred of evidence to dispute these facts. Instead Plaintiff argues that his satisfactory job performance is established by the fact that Plaintiff had worked for Defendant for more than a decade, received merit increases, awards, and was offered a severance package. *(Opposition at 11.)*

Plaintiff's reliance on his tenure with the Bank is misplaced. In fact, Plaintiff himself later acknowledges that the only relevant issue is whether Plaintiff was meeting the Bank's legitimated expectations at the time of his discharge, not years before. <u>Blahut v. W.W. Grainger, Inc.</u>, 1993 WL 454359, * 9, 65 Fair Empl. Prac. Cas. (BNA) 1858 (D. Md. 1993); <u>Pfeifer v. Lever Brothers Co.</u>, 693 F. Supp. 358, 364 (D. Md. 1987). Notably, Plaintiff does not challenge the fact that he had previously been selected for lay off due to his poor performance.

Plaintiff next relies upon the fact that he received a "merit increase" of 15 cents per hour in 2001 and 10 cents per hour in 2002 and his "awards," a NationsBank clock and pin. None of these does not do anything to distinguish Plaintiff from any of the other associates with whom he worked. While the pin indicates that it was given in 1999, Plaintiff does not establish when he received the clock or for what. Plaintiff further testified that he does not know whether the other associates also received these "awards." *(Plaintiff Dep. (Ex. 3) at 178:7 – 179:9, 207:3 – 209:17*

*and Exs. 12 and 13 thereto.*)  Plaintiff's reliance on the fact that he received merit increases is curious in light of the fact that he testified clearly during his deposition that he had not received any pay increases.[3]  *(Plaintiff Dep. (Ex. 3) at 146:1 – 147:7.)*  This fact notwithstanding, Plaintiff has not suggested that the other associates with whom he was compared did not received similar "merit" increases.

Plaintiff further argues that his satisfactory performance is established by the fact that he was offered a severance package.  The only support for this proposition Plaintiff has presented is a page from the Corporate Severance Program information he was provided upon his termination which does not state that an associate is eligible for severance only if his or her job performance was meeting the Bank's legitimate expectations.  If fact, the "Eligibility for Severance Benefits" Section list four prerequisites for the receipt of benefits:

- You are affected by a position elimination;
- You successfully perform your work until you position is officially eliminated;
- You do not receive a comparable job offer (see definition below) before the earlier of your last day worked or the end of your final severance pay,
- You properly sign, date and return the CSP Agreement and Non-Revocation Form.

*(Ex. 9 to Opposition.)*  The requirement that an associate successfully perform his or her work until the position is officially eliminated refers only to the requirement that the associate cooperate with the Bank and continue performing his or her duties during period between the notification of the fact that the associate is being laid off and the associates last day of work, if any.  It does not mean that the associate's job performance was meeting the Bank's legitimate expectations at the time the associates was selected for lay off.  Indeed, it is telling in Plaintiff's

---

[3] This inconsistency in Plaintiff's tale is one of too many to count.  Indeed, it is indicative of the complete lack of any admissible evidence to support Plaintiff's often, and literally, incredible and fantastic assertions.

case that his last day of employment was the day he was notified of his layoff. *(Affidavit of Mark Felse, attached hereto as Exhibit 7, at ¶ 5.)[4]*

Finally, Plaintiff attempts to rely on the ranking of the associates done by Ms. Broughman and Ms. Burkhart which he asserts shows that Plaintiff was meeting the Bank's expectations. However, while he was given a 4 or a 5 (designated as "met") in each of the 8 categories, each of the other 11 associates was ranked at a 6 or above (designated as "exceed" or "far exceed") in all of the 8 categories. Plaintiff does not dispute this fact. Thus, Plaintiff's job performance clearly was lower than every other associate in his group. Under these circumstances, Plaintiff cannot establish that his job performance was satisfactory as it was not up to the level of any of the other associates in his group. As a result, Plaintiff cannot establish the that his performance was meeting the Bank's legitimate expectations. Plaintiff's personal opinion that he was doing as much work as he thought he needed to do does not change this. *(Plaintiff Dep. (Ex. 3) at 95:1-21.)[5]*

### 3.    Plaintiff Cannot Establish That Any Associate Whose Performance Was Similar to His Own Was Retained

The final element of the various prima facie tests essentially requires Plaintiff to establish that the Bank retained associates whose job performance was at a lower or equivalent level to his own: that is, associates who were similarly situated to him and who are not within his protected class (or, with respect to age, who were substantially younger than him). Plaintiff simply has educed no evidence to establish any of these components.

---

[4] Plaintiff's claim that his performance was satisfactory because he was marked as eligible for rehire likewise misses the mark. The Bank's policy is that associates who have been selected for layoff as part of a reduction in force are generally considered eligible for rehire unless the associated has violated a condition of employment or engaged in other misconduct. *(Felse Aff. (Ex. 7) at ¶ 6.)*

[5] Plaintiff's mere subjective opinion in his Affidavit that he does not believe that there was a reduction in the volume of work and that it was a made up excuse to terminate him *(Opposition at 6 and Ex. A there to at 22)* is similarly insufficient to create a genuine dispute of material fact for purposes of summary judgment.

With respect to race and national origin, Plaintiff rests solely on his own affidavit testimony that "the employees who were retained consisted of Caucasians and American born individuals." *(Ex. A to Opposition at ¶ 27.)* First, through this statement Plaintiff seems to admit the undisputable fact that there were African American individuals among those retained. In fact, eight of the eleven individual who were retained are African American. *(Exhibit B to Broughman Aff. (Ex. 1); Sutton Aff. (Ex. 5) at ¶ 3.)* Plaintiff, however, considers himself to be within a separate protected group "African born African Americans." *(Opposition at 12 and 23.)*[6] The only distinguishing characteristic here is the fact that Plaintiff was African born and, thus, Plaintiff's claim really is that he was discriminated against on the basis of his national origin, not his race.

With respect to national origin, in his affidavit, Plaintiff states that the other employees in his group were "American born individuals." This assertion is made in a conclusory fashion, without identification of these individuals, and without any indication of how Plaintiff might have personal knowledge of the national origin of these eleven individuals. More importantly, this conclusory statement ignores Plaintiff's own testimony that at least one of the individuals in his group was from Africa. *(Plaintiff Dep. (Ex. 3) at 227:21 – 228:4)* It also ignores Plaintiff's testimony that he did not know those individuals or their national origins. *(Plaintiff Dep. (Ex. 3) at 193:1 – 203:9.)* Plaintiff cannot create a genuine issue of material fact as to the national origins of these individuals by contradicting his own deposition testimony with a conclusory affidavit. Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 975-76 (4th Cir. 1990); Barwick v. Celotex Corp., 736 F.2d 946, 959-60 (4th Cir. 1984). In addition, the Bank asked Plaintiff through Requests for Admission to admit that Plaintiff was not the only associate in his

---

[6] Plaintiff presents no support for the proposition that an individual can combine protected groups to create a different separate protected group.

group who was originally from Nigeria or Africa. *(Defendant's First Request for Admissions to Plaintiff Yekeen Bello, attached hereto as Exhibit 8, at Requests Nos. 1-6.)* These Requests were served upon Plaintiff on October 22, 2003 and have not been responded to, and, thus, are deemed admitted. Fed. R. Civ. P 36.

With respect to age, Plaintiff claims that all of the employees who were retained were under 40 years of age, relying on the Identification Data Sheet that was provided to Plaintiff as part of the Corporate Severance Program package he received. *(Opposition at 12 and Ex. 11 to Ex. A thereto.)* Plaintiff is correct that this sheet indicates that the retained associates were all under 40 years old. However, the undisputed evidence establishes that three of the associates against whom Plaintiff's job performance was compared and who were retained were over 40: Jenett Benda and Patricia Obi were 46 and Joyce Mapp was 49. *(Exhibit B to Broughman Aff. (Ex. 1); Sutton Aff. (Ex. 5) at ¶ 3.)* As is explained by Tynetta Robinson, the Identification Data Sheet, mistakenly included three individuals who were no longer with the Bank and failed to include these three individuals. *(Affidavit of Tynetta Robinson, attached hereto as Exhibit 9, at ¶ 3.)* Plaintiff suggestion that these individuals were identified by the Bank as being in Plaintiff's group in its Answers to Plaintiff's Interrogatories and the Affidavit of Doniel Sutton for the sole purpose of defeating Plaintiff's age discrimination claim lacks any evidentiary basis and is nothing more than wholesale speculation. It also fails to explain why those individuals were included in the ranking of associates in the group done by Mr. Broughman and Ms. Burkhart in June 2002.

Even if the above evidence is sufficient to meet Plaintiff's burden of establishing that some of the other associates in his group and with whom he was compared were outside of his protected classes, Plaintiff has produced no evidence as to the job performance of these

associates.  In fact, Plaintiff testified that he does not even know who these individuals are or what their job functions were.  Thus, Plaintiff cannot establish that individuals with substantially similar performance received more favorable treatment, Hughes, 48 F.3d at 1385, or that either his performance was at the level of those retained or that any associate retained was performing at a level below his.  Mitchell, 12 F.3d at 1316.  Moreover, Plaintiff has presented no evidence to contradict Ms. Broughman and Mr. Burkhart's testimony that Plaintiff was the lowest performing associate in the group.  *(Broughman Aff. (Ex. 1) at ¶ 8; Burkhart Aff. (Ex. 2) at ¶ 10.)*

Finally, Plaintiff asks the Court to preclude the Bank from asserting that Plaintiff has failed to establish that the remaining associates were performing at a lower level than Plaintiff because the Bank did not produce the personnel files of those associates during discovery.  *(Opposition at 14-15.)*  Plaintiff requested the personnel files of all employees in "Plaintiff's Department" that were not affected by the layoff.  However, contrary to Plaintiff's assertion, the Bank did not object solely on the ground that it could not tell what Plaintiff considered to be his "Department."  More importantly, the Bank offered to attempt to negotiate a responsible scope to the Request.

> The Bank objects to this Request on the grounds that it is vague in that the Bank cannot tell from the Request as written what Plaintiff might consider to be his "department."  The Bank further objects to this Request on the grounds that it is overly broad and does not seek information relevant to any claim or defense at issue in this lawsuit in that employee personnel files contain personal information which is not relevant in any way to Plaintiff's claims.  The Bank is willing to attempt to negotiate a reasonable scope to this Request.

*(Ex. D to Opposition at Response to Request No. 3.)*  Plaintiff never took the Bank up on this offer.  Plaintiff never requested that the Bank produce "the evaluation of the retained associates" which he now claims would have provided him the information he needed.  Plaintiff should not be allowed to avoid summary judgment through his own lack of diligence in discovery.

### 3.    The Bank Treated Age Neutrally In Its Selection for Layoff

Plaintiff claims that he can establish the final element of a prima facie case in the reduction in force context by establishing that the Bank did not treat age neutrally in selecting him for the layoff.  (It is important to note here that Plaintiff does not even contend that the Bank did not treat race or national origin neutrally in its selection process despite the fact that this analysis is equally applicable to Title VII as ADEA reduction in force claims.  Causey, 162 F.3d at 802.)  To do so, Plaintiff relies entirely upon the Identification Data Sheet which, as explained above, mistakenly indicates that the other members of his group were all under 40.  *(Opposition at 14.)*  However, the fact that the one individual selected was within a protected classification does not, alone, establish that that protected classification was not treated neutrally in the selection process.  Causey v. Balog, 929 F. Supp. 900, 912 (D. Md. 1996) (citing Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987) (noting that merely establishing protected status and an adverse action is insufficient to show a connection between that protected classification and that adverse action); Malina, 18 F.Supp.2d at 603 (noting "there is no automatic presumption that every termination of an employees between the ages of 40 and 70 results in a violation of the ADEA").  Moreover, Plaintiff fails to explain how any of the eight categories – accountability, client focus, communication, flexibility, initiative, interpersonal skills, teamwork, and technical/job knowledge - in which the associates were ranked were in any way not age neutral.  On their face, they are absolutely age neutral.  Plaintiff has, thus, failed to present any evidence that age was not treated neutrally in the selection process.  Ultimately, there is simply no evidence that age, race, or national origin were not treated neutrally in the selection process.

**B.      The Bank Has Met Its Burden of Establishing a Legitimate Non-Discriminatory Reason for Laying Off Plaintiff**

Plaintiff's argument that the Bank failed to satisfy its burden of establishing a legitimate, non-discriminatory reason for the decision to layoff Plaintiff is without merit.  *(Opposition at 16-17.)*  First, Plaintiff claims that the Bank failed to present any competent evidence.  To the contrary, the affidavits submitted by the Bank are exactly the sort of evidence identified by Rule 56 as being sufficient to support a motion for summary judgment.  Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the to the matters stated therein."); Celotex Corp., 477 U.S. at 324-25 (noting that Rule 56 does not require a party to depose its own witnesses).[7]

Ms. Broughman's affidavit is made on personal knowledge and explains that the Bank decided to reduce the complement of associates in Plaintiff's group as a result of a decrease in volume in an effort to cut costs and that Plaintiff was selected because Plaintiff's skills and performance ranked lower than each of the other eleven associates in each of eight categories. *(Broughman Aff. (Ex. 1) at ¶¶ 1-2 and 8; Felse Aff. (Ex. 7) at ¶ 3.)*  This establishes both a legitimate non-discriminatory reason for the decision to layoff an associate and for the decision to layoff Plaintiff.  Lewis v. City of Boston, 321 F.3d 207, 216 (1st Cir. 2003) (noting that "a reduction in force is itself a legitimate, nondiscriminatory reason for the layoffs").[8]

Clearly, the Bank has met its burden of production.  Causey, 929 F. Supp. at 909; Bailey v. Anne Arundel County, 259 F. Supp. 2d 421, 425 (D. Md. 2003).  See also EEOC v. Western

---

[7] The Bank notes the circular argument Plaintiff's notion seems to advance.  If the Bank's affidavits are not sufficient to support summary judgment, then neither is Plaintiff's affidavit sufficient to defeat it.

[8] Plaintiff's argument that the Bank has not established that he was eligible for elimination because working 32 hours per week he might not have been considered part time is specious.  However, in case there is any question, Plaintiff was considered part-time at the time of his layoff. *(Felse Aff. (Ex .7) at ¶ 7.)*  Interestingly, one of the

Electric Co., Inc., 713 F.2d 1011, 1014 (4th Cir. 1983) (noting that the "employer is not required to prove absence of discriminatory motive, but merely articulate some legitimate reasons for its action"); Henson v. Liggett Group, Inc., 61 F. 3d 270, 276 (4th Cir. 1995) (noting that assertions of genuine factual disputes as to the legitimate nondiscriminatory reasons do no prevent the employer from meeting its burden of production).

### C. Plaintiff Has Produced No Evidence of Pretext

Finally, Plaintiff argues that there are a number of ways he can establish pretext. However, Plaintiff fails to present anything more than speculative theories. Plaintiff fails to present any evidence sufficient to create a triable issue of intentional discrimination.

First, relying on Hillebrand v. M-Tron Industries, Inc., 827 F.2d 363 (8th Cir. 1987), Plaintiff argues that pretext is established by the fact that the Bank has not presented objective evidence of the need for a reduction in force. *(Opposition at 18.)* This, of course, ignores that the burden of proving an intent to discriminate remains at all times with the Plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). It is not the Bank's burden to prove the lack of discriminatory intent. Moreover, in Hillebrand, the plaintiff produced probative evidence that there had been no genuine reduction in force. Hillebrand, 827 F.2d at 368.[9] Here Plaintiff has presented no such evidence. All Plaintiff offers is the argument of counsel that because Plaintiff earned less than $14,000 per year there could not have been a legitimate business reason for his layoff. However, the arguments of counsel are insufficient to prove any intent to discriminate against Plaintiff on any basis. Rountree v. Fairfax County

---

eligibility requirements for the severance benefits, which Plaintiff relies on otherwise, is being affected by position elimination.

[9] Hillebrand is also distinguishable from this instant matter because there the issue was whether sufficient evidence of a reduction in force had been presented to trigger a more rigorous standard at the prime facie stage, one that would require the plaintiff to show that "age was a factor in the employer's decision." Hillenbrand, 827 F.2d at 367. The Fourth Circuit has not established such a more rigorous standard in such cases.

School Board, 933 F.2d 219, 233 (4th Cir. 1991).    Moreover, a court should not second-guess such business judgments.  Malina, 18 F. Supp. 2d at 603-03 (noting the importance that the Court "give the employer the latitude and autonomy" to make business decisions including how to conduct layoffs); Henson, 61 F.3d at 277.

Second, Plaintiff claims that Defendant has a "policy of making job offers to employees whose positions were eliminated" which it did not follow in this case.  *(Opposition at 18.)*  In an attempt to evidence this, Plaintiff points again to the page from the Corporate Severance Program information he was provided upon his termination.  *(Ex. 9 to Ex. A to Opposition.)*  That page simply does not articulate any such "policy."  In fact, all it says is that an employee who receives a comparable job offer is not eligible for severance benefits.  In addition, the fact that on another occasion that Plaintiff was slated for reduction he was allowed time to try to find another position, and when he failed to do so Ms. Broughman found him a position, also does not evidence any policy of making job offers to employees whose positions were eliminated but failed to pursue other options within the Bank as Plaintiff admits was the case in this matter.  What it does evidence is that Ms. Broughman did not bear Plaintiff any discriminatory animus.  Mitchell, 12 F.3d at 1318 (recognizing that the principle that "a strong inference arises that discrimination was not a determining factor in the adverse action" where the same supervisor responsible for an employee's discharge was also responsible for hiring the employee is equally applicable where the supervisor was responsible for a lateral move for the plaintiff rather than actual hiring).[10]

---

[10] Plaintiff argues that the Court should not consider the fact that Mr. Broughman had earlier been responsible for saving Plaintiff's job when considering whether there is any evidence of discriminatory intent because Plaintiff believes that he was hired into the position by his supervisor.  *(Opposition at 23.)*  Plaintiff's belief that Ms. Merrell hired her does not detract from Ms. Broughman's testimony that she, as Manager, was responsible for it.  This fact creates an inference of the absence of discriminatory intent.

Third, Plaintiff argues that the Bank could have chosen to reduce the hours of all of the associates instead of laying off one associate and the fact that it chose not to evidences pretext. *(Opposition at 19.)* The cases relied upon for this proposition, McCabe v. Champion Int'l Corp., 1990 U.S. App. LEXIS 18542 (6th Cir. 1990), and Hinton v. Board of Trustees of the University of Illinois, 1990 U.S. Dist. LEXIS 5883 (N.D. Ill. 1990), both discussed this concept in the context of disparate impact analysis. In a disparate impact case, if the plaintiff establishes that the application of a particular employment practice created a disparate impact and the defendant establishes a legitimate business justification for that practice, then the plaintiff can prevail by persuading the factfinder that there is an alternative practice that is equally effective in achieving the legitimate business justification that reduced the disparate impact. Wards Cove Packing Co., Inc. v. Antonio, 490 U.S. 642 (1989). This, however, is not a disparate impact case. Thus, the availability of a preferable alternative offered by the Plaintiff is completely irrelevant in this matter. Even if it were relevant, Plaintiff has present no evidence to support his asserted alternative other than the opinion of his counsel which, again, is insufficient. As mentioned above, in the non-disparate impact context Courts are consistent that they will not second guess business decisions of the employer. "It is not enough for the plaintiff to show that the employer made an unwise business decision, or an unnecessary personnel move." Blahut, 1993 WL 454359 at * 9 (citation and quotation omitted).

Fourth, Plaintiff claims that the fact the Bank did not "follow the usual seniority-based approach to a layoff decision" and did not explain why it "could not use the evaluations already on file for the associates" evidences pretext. Plaintiff has presented no evidence that the Bank has a "usual seniority-based approach" or any practice of using evaluations on file because this is

not the case.  Again, the Court will not second guess the Bank's business decision of how to conduct a layoff.  <u>Malina</u>, 18 F. Supp. 2d at 603-03.

Fifth, Plaintiff's assertion without more that as a long term employee he deserved better treatment in his discharge does not do anything to further Plaintiff's claim that he was discriminated against on the basis of his race, national origin, or age.

Sixth, Plaintiff claims that Ms. Burkhart's allegedly telling him that he was being retired because of his age is evidence pretext.  As discussed in the Bank's Memorandum, Plaintiff's testimony about this alleged comment does not bear any imprimatur of reliability.  In fact, it is further undercut by the Affidavit from Plaintiff's wife that was submitted with his Opposition. In it, Plaintiff's wife explains that on the day Plaintiff was laid off she asked him why he had been laid off and was told "that he was not given any reason."  *(Ex. B to Opposition at ¶ 9.)* Notably, he did not tell her that the had been told he was laid off because of his age as he now claims.[11]

Seventh, Plaintiff claims that because of his medical problems "Defendant considered [him] to be a liability."  *(Opposition at 22.)*  Again, Plaintiff presents absolutely no evidence of this.

Eighth, as explained in the Bank's Memorandum, Plaintiff's reliance on the other alleged "disparate treatment" to which he believes he was subject prior to his layoff does not further Plaintiff's claims of race, national origin, or age discrimination because Plaintiff's allegations are that he was treated differently that individuals both inside and outside of his protected classifications.  In fact, all of these allegations, which tend to show that associates within Plaintiff's were treated more favorably than he, "further demonstrate that [Plaintiff] has failed to

---

[11] Plaintiff's claim that he was given no reason for his termination is likewise incredible.  Mr. Felse explained to Plaintiff that his position had been effected by a reduction in force. *(Felse Aff. (Ex. 7) at ¶ 6.)*

identify any jury issue as to whether [the Bank's] proffered nondiscriminatory reasons for [Plaintiff's] discharge were pretext." Hughes, 48 F.3d at 1385. Plaintiff's claim that his claims are "amply corroborated by his spouse" is erroneous. Mrs. Bello has no personal knowledge of what happened at the Bank. In fact, the only way she can say anything about the subject is by repeating what she claims Plaintiff told her at some point in time. As such, Mrs. Bello's affidavit testimony on the subject of what took place at the Bank is not admissible to support Plaintiff's claims.[12] Contracts Materials Processing v. Kataleuna GmbH Catalysts, 164 F. Supp. 2d 520, 527 (D. Md. 2001).

Finally, in a desperate attempt to have the Court ignore undisputed, probative evidence, Plaintiff claims that the Bank should not be allowed the presumption of a lack of discriminatory intent that comes from the fact that the individuals who selected Plaintiff for layoff were older than Plaintiff. Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (noting that the plaintiff faces a difficult burden in establishing a discriminatory motive where the decisionmakers are, like the plaintiff, within the age group protected by the ADEA; these individuals "are more likely to be the victims of age discrimination than its perpetrators"). Plaintiff's reasoning is that the only evidence of Ms. Broughman and Ms. Burkhart's age is their own sworn testimony as to their dates of birth. This claim offers an appropriate end to a discussion of Plaintiff's host of baseless assertions. It is ridiculous for Plaintiff to suggest that these two women cannot have personal knowledge of their own birth dates, while he relies on his own affidavit testimony as the sole basis of establishing his own birth date. If affidavit testimony is insufficient to establish age, Plaintiff cannot establish a prima facie case of age discrimination because he cannot establish that he is within the class protected by the ADEA.

---

[12] However, Mrs. Bello's testimony that Plaintiff told her that he was not given a reason for his discharge is not hearsay because it is an admission by party-opponent. Fed. R. Evid. 801(d)(2).

Ultimately, Plaintiff has simply failed to present any admissible evidence to support his subjective belief that he was laid off because of his race, national origin, or age. Plaintiff's attempts to avoid his own testimony and the undisputed evidence are unavailing. Summary judgment should, therefore, be granted in favor of the Bank.

## IV.    <u>CONCLUSION</u>

For the reasons discussed above, the Bank's Motion for Summary Judgment should be granted. Judgment should be entered in favor of the Bank and against Plaintiff in this matter.

Respectfully submitted,

_____/s/_____

Douglas M. Topolski (Fed. Bar No. 07844)
Elena D. Marcuss (Fed. Bar No. 25547)
McGuireWoods LLP
Seven St. Paul Street, Suite 1000
Baltimore, Maryland  21202
(410) 659-4400

Attorneys for Defendant
Bank of America Corporation

**<u>Appendix of Exhibits</u>**

<u>No.</u>          <u>Description</u>

3             Select Portions of Deposition of Plaintiff

7             Affidavit of Mark Felse

8             Defendant's First Request for Admissions to Plaintiff Yekeen Bello

9             Affidavit of Tynetta Robinson

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of December 2003, a copy of the foregoing

Defendant Bank of America Corporation's Reply to Plaintiff's Opposition to its Motion for

Summary Judgment was filed electronically and served by first-class mail, postage prepaid, on

Counsel for Plaintiff:

> Fatai A. Suleman, Esquire
> Amorow & Kum, P.A.
> 7676 New Hampshire Avenue, Suite 315
> Takoma Park, Maryland  20912.


>                    /s/
> _____
> Elena D. Marcuss

\\LAB\#483394