IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YEKEEN A. BELLO,          :
    Plaintiff         :
                      :
v.                        :     Civil No. AMD 03-493
                      :
BANK OF AMERICA CORPORATION:
    Defendant         :
                        ...o0o...

MEMORANDUM OPINION

The plaintiff, Yekeen A. Bello, instituted this employment discrimination action against his former employer, defendant Bank of America Corporation, alleging that defendant discriminatorily terminated his employment in violation of Title VII of the Civil Rights Act of 1964("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Discovery has concluded and now pending is defendant's motion for summary judgment. I have given careful attention to the parties' memoranda and exhibits, and a hearing is not needed. Local Rule 105.6. For the reasons explained below, I shall grant the motion for summary judgment.

I.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if when applied to the

substantive law, it affects the outcome of the litigation. *Id.* at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). Of course, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

II.

Bello, who is Nigerian by birth, was 59 years old at the time he was discharged in

2002. He alleges that his termination was motivated by his national origin and/or his age.[1]

Bello's grievances against defendant go back more than 10 years to the very commencement of his employment with defendant's predecessor, Sovran Bank. For example, he contends that, although he had several college degrees and other educational achievements, repeatedly since 1991, he was refused employment in management positions. Nevertheless, it is clear that the gravamen of Bello's unlawful discharge claim asserted here is that he was selected for lay-off in June 2002 for impermissible reasons, i.e., national origin or age.

Originally, Bello worked in the transit section of Sovran Bank in Hyattsville, Maryland. Sovran was subsequently acquired by NationsBank, which later merged with defendant. Defendant closed the Hyattsville location and moved its check processing functions to the Operations Center in Baltimore. Bello remained in the transit section, where he was supervised by Lumell Mont, an African-American male. While working in the transit section in Baltimore, Bello received two performance reviews from Mont, receiving performance ratings of "at" or "below expectations." Although Bello signed the performance reviews, he contends that pages were missing or that the ratings were not filled in when he signed the reviews.

---

[1] Bello's complaint alleges discrimination on the bases of "age, *race* and/or national origin." (Emphasis added). As even he asserts, however, in his opposition to the motion for summary judgment, he is not "African-American" as that term is customarily understood in modern American usage, and he clearly does not assert a claim of *racial discrimination*. In any event, the record shows indisputably that the overwhelming majority of employees in Bello's employment unit were African-American; therefore, there is no basis whatsoever to believe that Bello was singled out for termination on the basis of "race."

Subsequently, Bello's unit underwent a reduction-in-force, and Bello's position was "slated for layoff." Employees whose positions were being targeted for elimination were afforded time to seek other positions at the bank, but Bello received no offers after interviewing for several openings. Diane Broughman ("Broughman"), who was born in 1937 and who is white, was the check processing manager in Baltimore. When she became aware that Bello had not been selected for any of the positions for which he had applied, she appealed to her supervisor to find a position for Bello.[2] Consequently, Bello was not laid off but was reassigned to work under the supervision of Phyllis Burkhart ("Burkhart"), who was born in 1942 and who is white, the supervisor of "Reconcilement and Reject Re-Entry" ("Reconcilement"). (Bello insists that he was not hired into Reconcilement by Burkhart, but rather by Marie Murrell, apparently another subordinate of Broughman, or of Broughman's supervisor, but this dispute over which bank supervisor was most immediately responsible for obtaining a new position for Bello is not material to the issues presented.)

According to defendant, Bello's job performance had not improved from the evaluations that he had received when he worked under Mont. In March 1999, Bello received a performance appraisal that covered the period from April 1997 through February 1999; he received ratings of "below expectations." Again, Bello denies that the actual ratings were on the review sheet at the time he signed it. Nonetheless, on deposition, Bello admitted

---

[2]"[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991).

that he did make notes on the sheet acknowledging his disagreements with Burkhart's assessment of his job performance.

In January 2000, Broughman and Burkhart counseled Bello for (1) "picking and choosing" among the bundles of checks to process (i.e., selecting the least onerous tasks and leaving others for colleagues); (2) unacceptable productivity; and (3) insubordinate behavior. Bello refused to sign the documentation acknowledging that such counseling occurred; he contends without corroboration of any kind that the documentation is a fabrication. Bello asserts that Burkhart never spoke to him about his speed on the "stripping machine," an apparatus employed to process a damaged check. In March 2002, Bello received another job performance appraisal in which his productivity was rated as "below expectations." Bello refused to sign this appraisal.

Bello contends that he was not trained in other job functions in the reconcilement department, and that he was permanently assigned to the stripping machine, a more physically demanding task, that no one else wanted, as well as monitoring the printers in the room. Defendant contends that Bello was assigned work in accordance with his demonstrated competence. In any event, as a result of the repetitive activity, Bello contends that he was diagnosed with "shoulder sprain and degenerative disease." Nevertheless, he contends, defendant refused to place him on light duty. In April 2002, Bello was diagnosed with cataracts in his left eye for which he underwent surgery. Bello informed Burkhart of the impending operation and requested and received a week off for the surgery and recuperation.

Upon his return to work, Bello learned that Broughman and Burkhart had requested that he be put on short-term disability, inferring that they were trying to ease him out of his job.

      According to Bello, shortly after returning from eye surgery, he elected to go on vacation (to Africa) and requested three weeks off. Although Bello had the leave time available, Broughman and Burkhart were displeased with his decision to take a full three weeks off. Bello returned from vacation and reported to work on June 10, 2002. Three days later, on June 12, 2002, Bello was terminated. Specifically, according to Bello, Burkhart approached him and allegedly informed him that "the President or some officer" of the bank wanted to see him. Bello further alleges that he inquired of Burkhart as to the reason for the meeting, and she allegedly replied "[the bank] was retiring Bello because of his age." (Burkhart is older than Bello.) The first time Bello has ever made such an allegation was in his deposition in this case. This assertion flatly contradicts Bello's wife's statement, made under oath in her affidavit submitted by Bello in opposition to the motion for summary judgment, that on the very day Bello was laid off, when she asked him why he had been laid off, he told her he had been given "no reason" for being laid off. In any event, at the ensuing meeting with personnel managers, Bello was advised he was being laid off.

      Defendant demonstrates through ample admissible evidence, which is wholly uncontradicted by Bello (other than his own assertion to the contrary), that in the first half of 2002, the Item Processing Department had identified Bello's unit as an area in which one part-time associate could be terminated based on a decrease in workload. In assessing which

associate should be laid off, Burkhart and Broughman ranked the 12 employees in the unit across eight categories and subcategories.[3] Bello ranked the lowest in each category, and was thereby selected to be laid off. Bello was offered a severance package in exchange for his execution of a general release, but he declined the offer. Following Bello's termination, the bank has never replaced Bello with a new hire.

### III.

The applicable legal standards for Bello's ADEA and Title VII claims are similar. In order to prevail on each claim, he must prove that but for the defendant's discriminatory motive, he would not have been discharged. *Mereish v. Walker,* 359 F.3d 330, 334-35 (4th Cir. 2004); *Williams v. Cerberonics, Inc.* 871 F.2d 452, 458 (4th Cir. 1989); *Malina v. Baltimore Gas and Electric Co.*, 18 F. Supp. 2d 596, 607 (D. Md. 1998). A plaintiff can prove such discriminatory animus under ordinary principles of proof using direct or indirect evidence, or in the alternative, under the judicially created "shifting burdens" method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Henson v. Liggett Group Inc.,* 61 F.3d 270, 274-75 (4th Cir. 1995)(applying *McDonnell Douglas* proof scheme in ADEA cases). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Provided that the plaintiff establishes a prima facie case,

---

[3] The skills and performance of the employees in the unit were evaluated on the following bases: accountability; client focus; communication; flexibility; initiative; interpersonal skills; teamwork; and technical/job knowledge.

the defendant has the burden of production to articulate that the reason for the plaintiff's dismissal is based upon a legitimate, nondiscriminatory reason. *Id.* at 254-55. Upon the defendant's showing that such a reason exists, the burden shifts back to the plaintiff to show that the proffered reasons are pretextual. *Id.*

Under the circumstances presented here (a reduction-in-force dismissal), to establish a prima facie case of discrimination, Bello must show that: (1) he is a member of a protected class; (2) he was selected from a larger group for termination; (3) he was performing at a level substantially equivalent to the lowest level of those retained in the group; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. *Mitchell v. Data General* Corp., 12 F.3d 1310, 1315 (4th Cir. 1993); *see Mereish,* 359 F.3d at 334-35. Defendant concedes that Bello satisfies the first two elements of a prima facie case of national origin and age discrimination. Nonetheless, defendant correctly contends that Bello has failed to establish a prima facie case of discrimination with respect to each claim, because he fails to satisfy elements three and four of his prima facie case, and, in any event, Bello fails to generate a genuine dispute of material fact as to defendant's explanation for his termination.

A.

1.

It simply is undisputed that Bello was not performing "at a level substantially

equivalent to the lowest level of those retained." Bello contends that he was meeting the bank's "legitimate expectations," but I agree with defendant that this case is properly viewed as a reduction-in-force case. *Cf. Malina,* 181 F. Supp. 2d at 607. This is the proper approach in this case because, aside from the undisputed proof offered by defendant that it effected a bona fide reduction-in-force, it is undisputed that Bello was *not replaced. Cf. O'Connor v. Consolidated Coin Caterers Corp.,* 84 F.3d 718 (4th Cir. 1996). Bello's performance appraisals after 1997 demonstrate conclusively that he was not "performing at a level substantially equivalent to the lowest level of those retained." *Mitchell,* 12 F.3d at 1315. Moreover, the evidence in the record includes the specific evaluations performed by Broughman and Burkhart in the run-up to the layoff, which show that of the 12 employees in the unit, Bello received the lowest ranking in each category on which the employees were evaluated, as well as the lowest overall average ranking. *See* Def.'s Ex. 2.

Bello argues conclusorily that he was performing at a level equal to the lowest performing associate retained, and offers the following as "evidence" of that performance: (1) he worked at the bank for more than a decade; (2) he was the recipient of merit pay increases and other awards; (3) he was offered a severance package upon termination; (4) he was eligible for rehire; and (5) he was meeting the bank's legitimate expectations. But these assertions, to the extent that are relevant at all, are mere subjective opinions, and do not constitute probative evidence that he was performing at a "level substantially equivalent to the lowest level of those retained in the group." *Cf. King v. Rumsfeld*, 328 F.3d 145, 149

(4th Cir. 2003) ("[Plaintiff's] own testimony, of course, cannot establish a genuine issue as to whether [plaintiff] was meeting [the employer's] expectations."), *cert. denied*, 124 S.Ct. 922 (2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir.) (noting that in adjudicating discrimination claims, courts should not be drawn into the role of mediating differences of opinion as to job performance between supervisors and subordinates), *cert. denied*, 531 U.S. 875 (2000). Bello's statements do not establish that he was "performing at a level substantially equivalent to the lowest level of those retained in the group." *Mitchell*, 12 F.3d at 1315.

Nor does Bello satisfy the fourth element of his prima facie case. The fourth element requires that "the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing." *Id*. This element may be satisfied by pointing to "probative evidence that indicates the employer did not treat age [or national origin] neutrally when making its decision." *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Apart from the alleged statement by Burkhart that he was being discharged ("retired") based on his age (discussed *infra*), Bello has utterly failed to suggest any basis for a conclusion that this element of his prima facie case has been satisfied.[4] Accordingly, Bello's age

---

[4] Bello asserts that defendant engaged in "dilatory discovery tactics" that precluded him from demonstrating that his job performance was equivalent to that of the 11 retained employees. This belated complaint about discovery is unavailing. On the very day of the discovery deadline established in the scheduling order, Bello sought an extension of the discovery deadline. The only justifications offered in support of the requested extension was that counsel was busy with
(continued...)

discrimination claim fails as a matter of law and defendant is entitled to judgment as to that claim.

2.

Even if it were assumed that, as to the age discrimination claim, this case should be treated as other than a reduction-in-force case, Bello would still fail to establish a prima facie case of age discrimination. To maintain such a claim, Bello must establish the following: (1) that he is a member of a protected class; (2) that he was discharged; (3) that he was meeting the employer's legitimate expectations; and (4) *that the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Dugan v. Albemarle County Sch. Bd.,* 293 F.3d 716, 721 (4th Cir. 2002); *Rhoads v. Fed. Dep. Ins. Corp.,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001)(disability claim).

Here again, even assuming that Bello was performing at a minimally satisfactory level and would not have been eligible for termination solely on the basis of poor performance or for misconduct, Bello fails to demonstrate that there is evidence that *his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination*. To satisfy

---

[4](...continued)
"other matters" and "the discovery period [sic] fell within [counsel's] vacation time." Counsel candidly admitted that no discovery was served on defendant until September 8, 2003, despite the fact that the scheduling order was filed on *June 2, 2003*. I denied the motion because good cause, as required in the scheduling order, had not been demonstrated. I am sympathetic to the pressures facing solo practitioners, but there cannot be a special timeline for discovery for practitioners based on how they choose to structure their practices. It goes without saying that when counsel wait until the eleventh hour to serve discovery on an adversary, it will be all but impossible to comply timely with the local rules of this court in respect to the adjudication of discovery disputes. *See* Local Rules 104.7, 104.8.

the fourth element under a non-reduction-in-force approach, Bello must show that there is "additional evidence indicating that the employer did not treat age neutrally in deciding to impose the adverse action." *Dugan,* 293 F.3d at 721. Bello asserts he has such evidence in that, when he was terminated, he was provided, as part of the documents concerning the Corporate Severance Program, an Identification Data Sheet ("IDS") that was prepared on May 31, 2002, identifying the ages of the 11 employees remaining in Bello's unit. The IDS shows that all of the remaining employees were outside of the protected class, i.e., younger than 40 years old, and thus, Bello asserts, is probative of the bank's discriminatory intent. This contention lacks merit.

In fact, it is undisputed that the IDS contained inaccurate data. Defendant has conclusively shown that if the bank's personnel records are not properly updated, then employees may be improperly included or excluded from such a list. That happened in this instance. An accurate depiction of the demographic make-up of Bello's department shows that at the time Bello was terminated, three employees were more than 40 years old, and thus within the protected class. Bello's attempt to rely on indisputably erroneous data to show that defendant treated age on anything other than a neutral basis in terminating his employment is unavailing.

Finally, Bello asserted for the first time in his deposition in this case that on the day he was laid off, June 12, 2002, Burkhart informed him that "the President or some other officer" wanted to see him, and that the bank was retiring him because of his age. Burkhardt,

who, like Broughman, is older than Bello, denies making such a statement. *See supra* n. 2. More fundamentally, defendant points out that the statement is contradicted by Bello's wife's affidavit, in which she affirms that on the day of Bello's termination, he informed her that he was given "no reason" for his termination. I agree with defendant that Bello's report to his wife, as recounted in her affidavit, must be given controlling effect in this case and is therefore not sufficient to generate a genuine dispute of material fact as to discriminatory motive. *See Church v. Maryland,* 180 F.Supp.2d 708, 739-42 (D.Md.), *aff'd,* 53 Fed.Appx. 673, 2002 WL 31819679 (4th Cir.2002).[5]

---

[5]In *Church*, I noted:
> The Fourth Circuit has stated that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 198 (4th Cir. 1997) (alteration in original) (internal quotation marks omitted) (quoting *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984)); *see Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 975-76 (4th Cir. 1990) ("Given the conflicts between Dr. Cox's affidavit and his deposition testimony, the district court was left not with a genuine issue of material fact, but with trying to determine which of several conflicting versions of Dr. Cox's testimony was correct." (citation omitted)).

180 F.Supp.2d at 739. I am cognizant that Bello's prior inconsistent statement, that he was not given a reason for his discharge, was not under oath. Nevertheless, it was a contemporaneous statement to his wife, who has given her account of the conversation under oath. Even assuming a spousal privilege might still permit Mrs. Bello from being called at trial, which is doubtful in view the evident waiver of the privilege by virtue of Bello's voluntary inclusion of his wife's affidavit in the summary judgment record, Bello's statement that no one at the bank gave him a reason for his termination would be admissible in evidence, e.g., as an admission (by Bello) contained in a statement against interest (by Mrs. Bello).

In any event, notwithstanding *Desert Palace, Inc. v. Costa,* 539 U.S.90 (2003)(elucidating requirements of a "mixed motive" case), which Bello has not bothered to cite, I do not regard the statement attributed by Bello to Burkhardt as direct evidence of age discrimination, as it was Burkhardt's superior, Broughman, who was the decision-maker as to Bello's termination. *Cf. Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 284 n.2 (4th Cir.2004) (en banc)("It has been assumed that the 'mixed motive' provision of the Civil
(continued...)

3.

Even assuming that Bello has established a prima facie case of age discrimination in the non-reduction-in-force context, however, the bank has clearly satisfied its burden to articulate a legitimate, nondiscriminatory reason for Bello's dismissal. *Burdine*, 450 U.S. at 254-55. That is, Bello's termination was an appropriate response to a decreased workload. The bank's decision to terminate Bello's employment for economic reasons is a legitimate non-discriminatory reason. *Mereish,* 359 F.3d. at 335 (quoting *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 513 (4th Cir. 1994)("The ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges.")). Bello fails to generate a genuine issue as to pretext.[6] Thus, Bello has failed

---

[5](...continued)
Rights Act of 1991 does not apply to the ADEA and, therefore, that the burden-shifting and direct evidence requirements . . . continue to apply to such claims."), *pet. for cert. filed*, 72 U.S.L.W. 3673 (April 4, 2004); *see id*. at 287-91, 291 ("[W]e decline to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision."). Nor could a reasonable juror *reasonably* find on the basis of that asserted remark that age discrimination was the reason for Bello's termination.

[6]Bello seeks to generate a genuine dispute of material fact with several arguments, each of which is unavailing. First, Bello asserts that his termination was intentionally discriminatory because he was not a part-time associate, and thus not even eligible for termination. Bello's argument is misguided, as by his own admission, Bello worked 32 hours per week, i.e., he was part-time under defendant's rules. Second, Bello asserts that defendant has failed to show that "there was a need for [a] reduction in force of just one employee." However, Bello has failed to marshal any evidence to support this question-begging assertion. Moreover, although Bello's annual salary amounted only to $14,000 a year, he has not demonstrated that any other part-time employee made more, such that greater savings would be achieved by laying off someone other than himself.

(continued...)

to demonstrate that a reasonable jury could reasonably conclude that defendant discriminated against him based upon his age. Accordingly, defendant's motion for summary judgment shall be granted as to the age discrimination claim.

III.

Finally, Bello utterly fails to proffer any probative evidence demonstrating that he

---

[6](...continued)

Third, Bello asserts that defendant's failure to offer him another position within the company violates its policy, and therefore is evidence of intentional discrimination. Bello's reliance upon the "Guide to Corporate Severance Program" as evidence of such a policy is misplaced, however. The excerpted section does not provide that defendant's policy is to offer employees who are laid off another position within the company. The excerpt states the requirements of an employee's eligibility for severance and benefits. Bello's proffered evidence discusses the severance program's eligibility requirements, not an established bank policy to offer jobs to employees who have recently been terminated.

Fourth, Bello suggests that there were alternatives to lay-off available to defendant. Bello suggests that *reducing the hours of all associates* was a "less discriminatory alternative" that defendant could have employed. Once again, however, apart from begging the question of whether there was discrimination in the first instance, Bello's assessment is misguided. The bank is not required to search for or provide alternatives to a specific economic course of action that it has chosen to take. Defendant must "merely articulate a justification that is 'legally sufficient to justify a judgment' in [its] favor." *Mereish,* 359 F.3d. at 330 (citing *Burdine,* 450 U.S. at 255). Furthermore, Bello's reliance on *McCabe v. Champion Int. Corp.*, 916 F.2d 713 (6th Cir. 1990) is misplaced. Aside from the fact that *McCabe* is not controlling authority in this circuit, the case is inapposite. *McCabe* is a case in which the plaintiff leveled disparate impact ADEA claims, not a disparate treatment case as here.

Fifth, Bello maintains that defendant failed to utilize the "usual seniority-based approach to a lay off decision, instead of its alleged skill-based evaluation." This assertion is pure argument lacking any evidence to support the implication that defendant even has a "seniority-based approach" to such decision-making. The court's function is to evaluate evidence presented before it to decide whether a genuine issue of material fact exists for a party to survive summary judgment. The court's role is not to second guess an employer's decisions as to how to adjust to economic changes. *Mereish,* 359 F.3d. at 330.

Finally, Bello contends that the heavy-handed manner in which he was terminated, *i.e.* being escorted from the building and requiring an acquaintance to retrieve his personal items, after ten years of loyal service, constitutes evidence of pretext. This bald assertion simply does not support the contention that a pretext for unlawful discrimination is shown.

-15-

was discriminated against on the basis of national origin. There is not a scintilla of evidence in the record to support the national origin claim. It is undisputed that defendant does not maintain data on employees' national origin. But even assuming that Bello's superiors could tell from Bello's accent or their from day-to-day interactions with him that Bello was not born in the United States (assertions that Bello does not make), the mere fact that one is born outside this country clearly is not sufficient, by itself, to support a jury verdict on an unlawful discrimination claim under Title VII, any more than the mere fact that one is a female or a Methodist would support such a verdict.

Accordingly, as to his national origin claim, Bello has offered no more than his status in support. As a matter of law, this is insufficient. In short, Bello has not demonstrated that his "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination" on the basis of national origin. *Williams,* 871 F.2d at 455.

IV.

For the reasons set forth, the motion for summary judgment shall be granted. An order follows.

Filed:  May 28,  2004                                /s/
                                             ANDRE M. DAVIS
                                             UNITED STATES DISTRICT JUDGE